**Robert W. SKINNER**

v.

**The UNITED STATES.**

· No. 305–75.

United States Court of Claims.

Feb. 21, 1979.

Maurice F. Biddle, Washington, D. C., attorney of record, for plaintiff; Thomas H. King, Washington, D. C., of counsel.

Donnie Hoover, Washington, D. C., with whom was Asst. Atty. Gen. Rex E. Lee,* Washington, D. C., for defendant; George M. Beasley, III, Washington, D. C., of counsel.

Before COWEN, Senior Judge, and BENNETT, Judge.*

## ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S CROSS–MOTION FOR SUMMARY JUDGMENT

BENNETT, Judge:

This case is before the court on motions for summary judgment. Plaintiff was a Regular Air Force temporary major, a senior pilot, with just under 15 years of total service as of March 31, 1975, when he was relieved from active duty as a result of having been twice passed over for selection as a permanent major. He then resigned in

lieu of discharge and for the purpose of enlisting in the Air Force as a sergeant.

Plaintiff alleges that the Air Force violated its regulations in rating him, an error it was bound to correct but did not. He further alleges that in denying his application for correction of his records, the Air Force Board for the Correction of Military Records (the Correction Board), acting without a hearing, and in the light of the evidence before it about the rating errors, was arbitrary and capricious and that its decision must be reversed. By way of relief, plaintiff asks that he now be granted the difference in pay between that of a sergeant (E–3) and a major for the period between March 31, 1975, and the date of judgment, restoration to active duty commissioned status as a major, voidance of two officer effectiveness reports (OERs), and amendment of his records to show that he was not considered by permanent selection boards for majors in August 1973 and July 1974. Plaintiff has abandoned an additional claim asserted in his petition for correction of his records to show him as having been selected for permanent major by the selection board which met in August 1973. We hold for plaintiff.

Plaintiff was a married officer with two children. He holds a college degree and has a distinguished military career, having flown 84 combat missions and having been awarded the DFC and seven air medals. His record is one of dedication to his country and competence in his profession. For about 5 years prior to his relief from active duty as an officer, plaintiff had been stationed at Williams Air Force Base, Arizona, serving in various capacities at different times. He was an instructor-pilot, flight commander, assistant section commander, and chief of the Wing Learning Center for the 82d Flying Training Wing. His last six ratings,[1] through October 31, 1975, were as follows:

---

* Senior Judge Durfee sat for oral argument before his death. He took no part in the decision. At the time of oral argument, Senior Judge Cowen was the Chief Judge. The Honorable

Rex E. Lee has been succeeded in office since oral argument.

1. Air Force overall evaluation ratings are based on a scale of 1 through 9, the latter number

| Period | Rating |
|--------|--------|
| July 1, 1970—June 30, 1971 | 8/4 |
| July 1, 1971—June 30, 1972 | 9/4 |
| July 1, 1972—Jan. 1, 1973 | 8/3 |
| Jan. 2, 1973—Apr. 29, 1973 | 8/3 |
| Apr. 30, 1973—Oct. 31, 1973 | 9/4 |
| Nov. 1, 1973—Oct. 31, 1974 | 9/4 |

A selection board for permanent majors met in August 1973. Plaintiff was passed over by that board. Another board met in July 1974, and he was again considered but not selected, although he had received a 9/4 rating in the previous reporting period. This second passover required plaintiff's separation from his position.[2] Plaintiff appealed to the Air Force Officer Personnel Records Review Board in 1974 for voidance of the 8/3 OERs listed above. His application was denied on February 10, 1975. Plaintiff next applied to the Air Force Board for the Correction of Military Records on February 14, 1975, seeking the same relief he set forth in his petition to the court. That application was denied without a hearing on August 1, 1975. This suit followed.

In support of his claim that the Air Force did not follow legal procedures in rating him, plaintiff places heavy reliance on paragraph 5–5c, Air Force Manual (AFM) 36–10(C3) (Nov. 12, 1968), which provides as follows:

> c. Any official in the chain of com-. mand who is superior and senior to the initial indorsing official *may* add an indorsement to an OER provided it adds substantive information about the ratee's performance. If he does not agree with one or more ratings, he will place his initials (without encircling them) in the appropriate boxes. Should the block in

which he desires to place his initials already contain an "X," or initials of a previous indorsing official, he will place his initials immediately above the block. Significant disagreement with ratings or comments will be substantiated by specific comment. [Emphasis in text.]

Plaintiff tells us that the foregoing provision was violated by defendant in that his raters did not give plaintiff a 9/4 rating to which they honestly thought he was entitled. The reason for this was that, on the first 8/3 rating, the rater, Maj. Lucian A. Ferguson, talked to his own superior before rating plaintiff and was dissuaded from giving plaintiff a 9/4 because that officer, Lt. Col. William M. McVeigh, III, the squadron commander, told the rater that Col. Edward Mendel, the deputy for operations, would not approve it and would downgrade it to 8/3. He did not explain why he thought this to be so. The rater accepted this instead of exercising his own honest, independent judgment based on his personal observation of plaintiff's merits. It is important in understanding this problem to note that in the Air Force rating system there are always two officers, senior to the officer being rated, who are signatories on his report. One is the rater, who is the immediate supervisor. The second is senior to the immediate supervisor and is called the "indorsing official." A third officer, senior to the first two and who was Colonel Mendel in this case, must indorse the rater's report if the rating is "outstanding" or better. He is called an "additional indorser." Since Colonel McVeigh had authority to rate the rater, the latter found it advisable to follow his recommendations

being highest, and promotion potential on a scale of 1 through 4, with 4 being the highest. Thus, a 9/4 is the highest possible rating and is described as "Absolutely Superior"—"Outstanding growth potential based on demonstrated performance. Promote well ahead of contemporaries." An 8/3 rating reads: "Outstanding. Almost never Equaled"—"Demonstrates capability for increased responsibility. Consider advancement ahead of contemporaries."

2. The Air Force promotion system has both permanent and temporary ranks. The temporary grade is a holdover from World War II when a rapidly expanding military force required rapid promotions. The permanent grade is one to which an officer must be promoted by statute and may be the same or a lesser rank than held by an officer on active duty. If a Regular Air Force officer is not selected by two selection boards for permanent rank he is forced out under the "up or out" promotion policy. 10 U.S.C. §§ 8299(h), 8303(d).

and to accept his information about the views of the commander, Colonel Mendel, without question. Major Ferguson admits that this is the only reason he did not rate plaintiff 9/4. Since Major Ferguson found it personally prudent and expedient, on account of McVeigh's views, not to give plaintiff the rating he admits he deserved, the AFM provision cited above did not come into play and did not show McVeigh's "[s]ignificant disagreement with ratings or comments * * * substantiated by specific comment," accompanied by his initials. Thus, the purpose of the AFM was completely thwarted. There is no issue of fact about what the rater thought would have been a proper rating or about McVeigh's influence in dissuading him from rating plaintiff as 9/4.

 On the second 8/3 rating received by plaintiff, the cast of players was slightly different but the results were the same. Maj. Charles L. Dougherty succeeded Major Ferguson as T-38 section commander and as plaintiff's rater. Plaintiff was still the assistant section commander. Major Dougherty also proposed rating plaintiff as high as possible, 9/4. He discussed his intent with Lt. Col. William P. Smith, squadron operations officer, who was also Major Dougherty's rating officer. Smith told him the same thing that McVeigh told Ferguson, namely, that such a high rating would never clear Colonel Mendel, the deputy for operations. Colonel Smith says his reason for making the statement was because he believed Colonel Mendel was not pleased with plaintiff because plaintiff had evaded a check-ride [3] by an evaluation team from higher headquarters. Smith's statement, which we now have, admits that he was wrong on the facts, that plaintiff had not evaded the check-ride but had indeed taken it, and, further, that if Major Dougherty had given plaintiff a 9/4 rating he, Smith, would have indorsed and concurred in it. Since the rater and indorser would have given plaintiff a 9/4 and the impression

that plaintiff would not be approved for this by Colonel Mendel because of the check-ride issue which was entirely false, plaintiff says that he was not fairly and honestly rated. We agree. Again AFM 36–10(C3) was nullified and bypassed in the rating process on mistaken facts and for expediency personal to the rater's own interests. Plaintiff's military career was thus ruined through no fault of his own, but because of improper command influence and bureaucratic bungling. This was a clear error and an injustice to plaintiff but the Correction Board refused to exercise its authority and mandate, under statute and regulation, to correct it. We do not think that it had to grant a hearing to do so, especially where the evidence was so clear and convincing, and we discount plaintiff's argument on that point. AFR 31–3, § 3, ¶ 9 (Oct. 21, 1970). But, we do think this was the kind of error and injustice that cried aloud for relief and that Congress had in mind when creating correction boards. Otherwise, the integrity of the promotion system is seriously compromised. Plaintiff was not rated on the merits of his performance as an officer of the United States Air Force. He had a legal right to be so graded on a "fair and equitable" basis and to have his proper rating considered by selection boards. 10 U.S.C. §§ 3442(c), 8442(c). Defendant's failure to follow the statutes and its published procedures is reversible for legal error where those procedures are required and their violation is substantial and prejudicial. *Cruz-Casado v. United States,* 553 F.2d 672, 213 Ct.Cl. 498 (1977); *Borgford v. United States,* 208 Ct.Cl. 1040 (1976); *Bray v. United States,* 515 F.2d 1383, 207 Ct.Cl. 60 (1975). The Correction Board brushed the case aside with the simple explanation that plaintiff had "not submitted sufficient evidence to establish a showing of probable error or injustice in the case." We find this incredible in view of the record the board had before it.

We note that plaintiff's performance subsequent to the challenged OERs was so

---

**3.** A check-ride is a test flight, required under supervision, without prior notice, on which a pilot is observed and graded on 40 items of instruction technique and 40 items of proficiency in the handling of aircraft.

absolutely superior and outstanding that he was rated 9/4 on two occasions and was made chief of the Learning Center for T-38 aircraft. But, this all came too late to save his career. Reasons which wrecked it were not stated by the rater and indorser as the AFM required. Further, Colonel Mendel, who expressed dismay that plaintiff was not promoted, states in a letter, which is a part of the court record in this case, that "I cannot recall any direct conversation with Colonel Smith or Colonel McVeigh or anyone else about what specific rating should be given to Major Skinner, but I may have done so." He says, "I am reasonably sure that the subject of Major Skinner ducking a check-ride was not discussed." He concludes: "I hope this provides you the information you are looking for, and that Major Skinner is able to use it to continue his fine service to the Air Force." These then being the undeniable facts of the case, can the court grant the relief which plaintiff demands?

In further answering this question in the affirmative, we now refer to the statute establishing correction boards, 10 U.S.C. § 1552:

> (a) The Secretary of a military department, under procedures established by him and approved by the Secretary of Defense, and acting through boards of civilians of the executive part of that military department, may correct any military record of that department when he considers it necessary to correct an error or remove an injustice. * * *
>
> * * * * * *
>
> (c) The department concerned may pay, from applicable current appropriations, a claim for the loss of pay, allowances, compensation, emoluments, or other pecuniary benefits, or for the repayment of a fine or forfeiture, if, as a result of correcting a record under this section, the amount is found to be due the claimant on account of his or another's service * * *.

Air Force regulation 31–3 tracks the statute. Defendant argues that the above statute and regulation provide only a permissive procedure, as does AFM 36–10(C3), that failure to implement their stated purposes is no business of the courts which are not contemplated by the law as "super correction boards," and that, as only the military can promote, we cannot interfere in the selection process either. Defendant says that we can reverse boards only in the limited circumstances where they commit violation of regulations or are improperly constituted, as these are legal errors. *Ricker v. United States,* 396 F.2d 454, 184 Ct.Cl. 402 (1968). We do not think our powers are so limited under the Tucker Act, 28 U.S.C. § 1491, which gives us jurisdiction to enter judgments "upon any claim against the United States founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department" and to "provide an entire remedy and to complete the relief afforded by the judgment, the court may, as an incident of and collateral to any such judgment, issue orders directing restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records, and such orders may be issued to any appropriate official of the United States."

 We say that our authority to review illegal actions of selection boards is thus not limited to the two examples defendant concedes. Jurisdiction also extends to a board decision made illegal because of board consideration of illegally prepared or omitted material in selection folders. *Yee v. United States,* 512 F.2d 1383, 206 Ct.Cl. 388 (1975); *Weiss v. United States,* 408 F.2d 416, 187 Ct.Cl. 1 (1969), *Henderson v. United States,* 175 Ct.Cl. 690 (1966), *cert. denied,* 386 U.S. 1016, 87 S.Ct. 1373, 18 L.Ed.2d 455 (1967). That is what we have here. The record before the selection board was fatally defective because it was prepared in violation of published, mandatory procedures authorized by statute and regulations with the force of law. Defendant's errors were compounded when the Correction Board was shown that false, misleading, and prejudicial OERs about plaintiff were submitted to the selection boards and did abso-

lutely nothing to correct the errors and injustices when it could have, and should have, corrected the records and paid for the mistakes by restoring plaintiff to his position and giving him back pay. On the action of either of these two boards, plaintiff is entitled to recover the pay of the position from which he was illegally separated and to reinstatement. If this is not the law, then what recourse does plaintiff have? This great nation does not wish to treat the personnel of its armed services with dishonor and indifference, and the law will not permit it. The integrity and objectivity of the rating system go to the very heart of the military establishment's effectiveness, and all we do here is to preserve it as the statutes and authorized procedures contemplate and mandate. This does not make the court a super correction board. We are only discharging our own statutory duties. We do not interfere in military matters except where authorized to do so by statute. Fortunately, we are called upon to exercise that authority in relatively few cases because the military and correction boards generally fulfill their statutory responsibilities in an admirable way. It is not for us to second-guess them. But, the presumption favoring the regularity of administrative actions is rebuttable and can be, and has been, overcome in cases much like the present one when it was found that the Correction Board and the Secretary were in error and guilty of arbitrary, capricious actions. *Jordan v. United States,* 205 Ct.Cl. 65 (1974); *Hankins v. United States,* 183 Ct.Cl. 32 (1968); *Biddle v. United States,* 186 Ct.Cl. 87 (1968); *Ward v. United States,* 178 Ct.Cl. 210 (1967). Of course, plaintiff's burden in such situations is a heavy one. *Meyer v. United States,* 212 Ct.Cl. 537, *cert. denied,* 434 U.S. 817, 98 S.Ct. 55, 54 L.Ed.2d 73 (1977); *Cooper v. United States,* 203 Ct.Cl. 300 (1973).

Defendant cites us to a recent order of the court in *Tanaka v. United States,* 210 Ct.Cl. 712, 713 (1976), *cert. denied,* 430 U.S. 955, 97 S.Ct. 1599, 51 L.Ed.2d 804 (1977), which says, in part:

"Ratings and promotions are discretionary matters. We must not interfere with these internal affairs of the military *unless* there is a showing of clear error, abuse of discretion, or arbitrary and capricious action." *Boyd v. United States,* 207 Ct.Cl. 1, *cert. denied,* 424 U.S. 911, 96 S.Ct. 1106, 47 L.Ed.2d 314 (1975); *Dorl v. United States,* 200 Ct.Cl. 626, *cert. denied,* 414 U.S. 1032, 94 S.Ct. 461, 38 L.Ed.2d 323 (1973). * * * [Emphasis supplied.]

As we said in *Savio v. United States,* 213 Ct.Cl. 737 (1977), this is "ordinarily" the rule. We adhere to it. But, in considering our permissible scope of review, it is proper to bear in mind here some of the distinctions between selection and correction boards. The former select officers for promotion. The court cannot do this. We can award a person pay above the position he occupied only if there is a clear-cut, legal entitlement to it. Such cases are rare. *See Selman v. United States,* 498 F.2d 1354, 1358, 204 Ct.Cl. 675, 684 (1974); *cf. Doggett v. United States,* 207 Ct.Cl. 478, 482 (1975). But, we can and do review the actions of a selection board for legal error, which may result in an award of back pay for a board action which results in an illegal discharge. We also review correction board actions where it has been alleged that they, too, may have violated some statutory requirement or regulation. Where there is legal error in such proceedings, we can also give back pay and appropriate collateral relief under 28 U.S.C. § 1491. The correction board could give additional relief, such as ordering a promotion. The correction board can also correct an injustice not amounting to legal error. Here our authority is more restricted. It takes more than an unfair rating or simple injustice to merit our consideration or judicial relief. It must be an unlawful act made so by violation of statute, or regulation, or published mandatory procedure, or unauthorized act, or so unsupported by the evidence as to be a gross injustice, unlawful because of clear legal or factual error, manifest abuse of discretion, or arbitrary and capricious action amounting to bad faith or fraud, and seriously prejudicial. *Sanders v. United States,* 594

F.2d 804 (Feb. 21, 1979). *See also Borgford v. United States, supra; Reale v. United States,* 208 Ct.Cl. 1010, *cert. denied,* 429 U.S. 854, 97 S.Ct. 148, 50 L.Ed.2d 129 (1976); *Jordan v. United States, supra; Lewicki v. United States,* 204 Ct.Cl. 1 (1974); *Skaradowski v. United States,* 471 F.2d 627, 200 Ct.Cl. 488 (1973); *Kaeserman v. United States,* 202 Ct.Cl. 1081 (1973); *Duhon v. United States,* 461 F.2d 1278, 198 Ct.Cl. 564 (1972); *Stephens v. United States,* 358 F.2d 951, 174 Ct.Cl. 365 (1966). "The fact that this court has the jurisdiction to review actions of military correction boards is not disputable. *Hertzog v. United States,* 167 Ct.Cl. 377, 383–384 (1964), and cases cited therein." *Armstrong v. United States,* 205 Ct.Cl. 754, 761 (1974).

▉ Defendant raises the holding in *United States v. Testan,* 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976), as a defense. That was a civilian pay case involving the Back Pay Act and classification of certain civil service employees. However, the Supreme Court in that case did say that the Tucker Act, 28 U.S.C. § 1491, is merely jurisdictional and that entitlement to money damages depends upon whether any federal statute "can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained." The Court of Claims itself said as much in *Eastport S. S. Corp. v. United States,* 372 F.2d 1002, 1009, 178 Ct.Cl. 599, 607 (1967). We have no trouble with that rule here because, as previously pointed out, the correction board statute provides for the payment of money, when it is lawfully complied with, and, in any event, an officer is entitled to the pay of the position to which he was legally appointed. 37 U.S.C. § 204. It must follow that he is still entitled to it if illegally separated, for such discharge is not legally recognizable. *Borgford v. United States, supra.* Plaintiff has suffered money damages, a cut in pay from major to ser-

geant, and is entitled to be made whole where the action that resulted in this loss was defendant's fault and the statutes provide for payment, as shown.

Defendant has raised various other defenses. Only one more of them merits consideration here. Defendant argues that, even had no mistakes been made in plaintiff's rating, there is no assurance that the selection board would have made any decision other than what it did.[4] Defendant says that the burden is on plaintiff to show that "but for" the errors he would have been promoted anyway. Defendant cites us to no military pay case which so holds. Of course, considering the secret nature of selection board proceedings, there is just no way a plaintiff could ever sustain such a burden of proof. Further, no plaintiff, no matter how badly wronged, could ever recover in a law suit under such a standard made applicable to the correction of records. If there is to be such a showing to establish the defense of harmless error on defendant's part, it would more fairly belong to defendant—the party guilty of the mistake in the first place. This is the rule in civilian pay cases. *Mt. Healthy City Board of Ed. v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Day v. Mathews,* 174 U.S.App.D.C. 231, 530 F.2d 1083 (1976). Under the circumstances of the pending case, however, we do not find it necessary to resolve it on this issue. Plaintiff is not now seeking promotion. Nor would it be appropriate to remand the case to the Correction Board to make a finding on this issue, which is not dispositive here.

For the reasons heretofore explained, we hold that this claim is within our jurisdiction, that plaintiff has established his right to recover, and that he is entitled to back pay measured by the difference in pay between that of a sergeant (E–3) and a major for the period March 31, 1975, to date of judgment. Pursuant to our authority un-

---

4. Selection board determinations are merely recommendations to the Secretary, as are his to the President who appoints all military officers who are then subject to Senate confirmation. Selection boards consider breadth of experience, overseas tours, education, professional competence, combat achievements, awards, decorations, and leadership of officers eligible for promotion. But, the most critical item in an officer's selection folder is his OER, and if it is low or compares unfavorably with those of his peers, it is fatal to his chances of selection.

der 28 U.S.C. § 1491, we further order that plaintiff be restored to active duty commissioned status as a major (with his consent), that the two illegal 8/3 OERs given in 1973 be removed from his file, that his record be corrected to show that they were removed by judicial authority and that he was not legally considered by selection boards in August 1973 and July 1974, and that he is now entitled to be considered upon his corrected record. Plaintiff's motion for summary judgment is granted. Defendant's motion is denied. The case is remanded to the trial division for computation of plaintiff's entitlement pursuant to Rule 131(c).

