Robert P. MOORE, Plaintiff,

v.

John O. MARSH, Jr., et al., Defendants.

Civ. A. No. 82-1350.

United States District Court,
District of Columbia.

Feb. 17, 1983.

Paul A. Kiefer, Washington, D.C., for plaintiff.

Mitchell R. Berger, Asst. U.S. Atty., Washington, D.C., for defendants.

## MEMORANDUM OPINION

JUNE L. GREEN, District Judge.

This action is before the Court on defendants' motion for a judgment of affirmance pursuant to Rule 7(b)(1) of the Federal Rules of Civil Procedure and plaintiff's motion for summary judgment. For the reasons stated below, the Court grants defendants' motion and denies plaintiff's motion.

### I.

#### Background

The plaintiff is a major in the Army who challenges here a decision of the Army Board for Correction of Military Records (the Board) dated December 16, 1981. That decision denied Major Moore's application for removal of an administrative punish-

ment received under Article 15 of the Uniform Code of Military Justice, codified at 10 U.S.C. § 815.

The Article 15 punishment arose from Major Moore's request for reimbursement of commercial airline and taxi expenses incurred while shipping his personal automobile to the United States from Germany.

Major Moore has been an officer in the United States Army since 1964. Administrative Record (A.R.), Volume 1, at 3. From February 1973 until July 1977, he served in West Germany as Executive Officer of the 1st Aviation Department, United States Army Element, Headquarters, United States European Command. Major Moore flew helicopter missions and supervised administrative and logistical activities of his unit. In the commander's absence, Major Moore assumed command responsibility for the unit. A.R. 2, at 55.

On June 12, 1977, Major Moore drove his car to the port of Bremerhaven in order to ship it home. He arrived in Bremerhaven at 8:00 p.m. Since he was scheduled to fly a mission at 5:00 a.m. on June 14, an Air Force T–39 plane was to pick him up in Bremerhaven at 11:00 a.m. on June 13. However, Major Moore cancelled that flight because of delays at the port. Major Moore took a commercial flight to Stuttgart later in the day on June 13 in order to arrive in time to fly the mission on June 14. A.R. 3, at 106–07.

On arrival, Major Moore learned his commander had cancelled him for the mission. After consulting the finance officer, Mrs. Jeanette Taasevigen, he submitted a request for reimbursement of the return travel expenses, and received payment. Plaintiff's commanding officer initiated an investigation concerning the propriety of the claim for reimbursement. Id.; A.R. 3, at 16–17, 47.

In July 1977, Major Moore returned to the United States on assignment to the United States Army Material Development and Readiness Command (DARCOM). After receiving a letter from the 11th Aviation Group stating that the claim was not mission related, Major Moore repaid the claim immediately. A.R. 3, at 108. The Commanding General of DARCOM found subsequently that Major Moore had knowingly presented a false claim to the government for $167.77 on June 14, 1977 and thus stole that amount, in violation of Articles 121 and 132 of the Uniform Code of Military Justice, 10 U.S.C. §§ 921, 932. As punishment, Major Moore forfeited $200 of pay for two months. A.R. 2, at 129 (substituted copy filed January 10, 1983).

Major Moore had submitted complaints about the flight capabilities of his commander in Germany. In August 1978, the Board recommended that an adverse officer efficiency rating (OER) from his commander in Germany be removed from personnel records because of possible bias. A.R. 1, at 47, 51. The Army removed the OER promptly. The Board, however, rejected each of plaintiff's four requests for removal of the Article 15. See A.R. 1, at 4, 6, 11, and 14. It should be noted that the Commanding General of DARCOM imposed plaintiff's Article 15, not plaintiff's commander in Germany.

The last request was submitted in October 1981. It contained the report of a polygraph examination arranged by Major Moore and administered in May 1981. The five questions tested concerned the sincerity of Major Moore's belief that Mrs. Taasevigen, the finance officer at Echterdingen, processed travel claims liberally. A.R. 3, at 100.

The Board denied the most recent request in December 1981. In discussing the polygraph examination, the Board observed,

Although the statement made by the polygraph examiner tends to show that the applicant was truthful about his actions in filing the travel voucher in June 1977, it does not conclusively establish that the voucher was submitted in good faith.

A.R. 1, at 3.

The Board noted that the polygraph examination was arranged and paid for by the applicant. In concluding its brief discussion, the Board stated "there is insufficient

justification for granting the relief requested." It determined that the applicant had failed to "submit sufficient relevant evidence to demonstrate the existence of probable material error or injustice to warrant a formal hearing." *Id.,* at 3–4.

Plaintiff raises four objections to the Board's determination. He alleges that the Board (1) applied an inappropriate burden of proof in using the word "conclusively" to reject the polygraph results; (2) created an irrebuttable presumption by noting that the polygraph examination was arranged privately for a fee; and (3) did not set forth all essential facts in its decision denying relief. Fourth, plaintiff asserts that the evidence in the record does not support the Board's decision.

## II.

### *Discussion*

The Army Board for Correction of Military Records is composed of three civilians, appointed by the Secretary of the Army. The Board may correct any military record where "necessary to correct an error or remove an injustice." 10 U.S.C. § 1552(a) (Supp.1982). When the Board determines that "insufficient relevant evidence has been presented to demonstrate the existence of probable material error or injustice," it may deny an application. 32 C.F.R. § 581.3(c)(5)(ii). Denial is without prejudice to applications for reconsideration of new relevant evidence. *Id.*

▮ Judicial review of the Board's determinations is limited. The appellant must show that the Board's decision was arbitrary, capricious, unsupported by substantial evidence, or otherwise unlawful. *Grieg v. United States,* 640 F.2d 1261, 1268, 226 Ct.Cl. 258 (1981); *Knehans v. Alexander,* 566 F.2d 312, 315 (D.C.Cir.1977), *cert. denied,* 435 U.S. 995, 98 S.Ct. 1646, 56 L.Ed.2d 83 (1978); *Nolen v. Rumsfeld,* 535 F.2d 888 (5th Cir.1976), *cert. denied,* 429 U.S. 1104, 97 S.Ct. 1133, 51 L.Ed.2d 556 (1977); *Storey v. United States,* 531 F.2d 985, 209 Ct.Cl. 174 (1976); *Yee v. United States,* 512 F.2d 1383,

206 Ct.Cl. 388 (1975); *Horn v. Schlesinger,* 514 F.2d 549, 553 (8th Cir.1975); *Fuller v. Alexander,* 440 F.Supp. 380 (D.D.C.1977); *Amato v. Chafee,* 337 F.Supp. 1214, 1217 (D.D.C.1972).

The Court may not substitute its judgment for that of the Board. *Grieg v. United States,* 640 F.2d at 1265. Its task is to review the record "to insure that the pertinent laws and regulations were followed." *Amato v. Chafee,* 337 F.Supp. at 1217. To warrant judicial relief, there must be

an unlawful act made so by violation of statute, or regulation, or published mandatory procedure, or unauthorized act, or so unsupported by the evidence as to be a gross injustice, unlawful because of clear legal or factual error, manifest abuse of discretion, or arbitrary and capricious action amounting to bad faith, fraud, and seriously prejudicial.

*Skinner v. United States,* 594 F.2d 824, 830, 219 Ct.Cl. 322 (1979).

After consideration of the record of proceedings, including the Board's prior determinations of Major Moore's applications, the Court affirms the latest decision of the Board rejecting Major Moore's application. Plaintiff has not shown the Board's determination to be arbitrary, capricious, unsupported by substantial evidence, or otherwise unlawful.

The Court reaches this decision for two reasons. First, the earlier determinations clearly explained the Board's initial and valid reasoning. On September 20, 1978, the Board concluded that Major Moore,

with the foreknowledge of being scheduled for an early mission on 14 Jun 78 *, apparently made a personal choice to go to the port of embarkation with his car so that he could turn it in on the morning of 13 Jun 78 *, thereby allowing himself little leeway in the event a contingency were to occur as it did in this instance.

A.R. 1, at 14.

In its second determination, on February 22, 1979, the Board found it

---

* The correct year was actually 1977.

difficult to understand how (Major Moore) could associate the period of travel performed to the POE (port of embarkation) and back as mission related, even though someone in the Army Finance Office might have implied that such was the case.

A.R. 1, at 11.

It is clear from these decisions that the Board declined initially to remove the Article 15 because of a belief that Major Moore allowed insufficient time for returning his car and could not reasonably have associated those expenses as related to the mission he had scheduled for the following day. Doubt of Major Moore's sincerity in submitting the claim was not the basis for denying his applications.

■ Second, the Board determined correctly that the polygraph examination did not suffice to demonstrate "probable material error or injustice." Polygraph results are of doubtful reliability; they are inadmissible generally in federal criminal trials and in military courts martial. *See, e.g., United States v. Skeens,* 494 F.2d 1050, 1053 (D.C.Cir.1974); *United States v. Zeiger,* 475 F.2d 1280 (D.C.Cir.1973) (case 1), *revs'g mem.* 350 F.Supp. 685 (D.D.C.1972); *United States v. Cardarella,* 570 F.2d 264, 266–67 (8th Cir.1978), *cert. denied,* 435 U.S. 997, 98 S.Ct. 1651, 56 L.Ed.2d 87 (1978); *United States v. Helton,* 10 M.J. 820 (A.F.C.M.R. 1981); *United States v. Martin,* 9 M.J. 731, 737 (N.C.M.R.1979); *see generally,* Military Rules of Evidence Manual 324–26 (Saltzburg, Schinasi & Schlueter eds. 1981). In addition, the polygraph findings here were not clearcut. The examiner found that Major Moore answered deceptively whether it was "normal SOP (standard operating procedure) for Mrs. Taasevigen to determine if questionable items were payable or not." A.R. 3, at 100. Major Moore was not asked directly whether or not he intended to submit a fraudulent claim. Nor was he asked about the voucher itself.

Three of Major Moore's arguments challenge the wording of the Board's latest determination. Preliminarily, the Court notes that "the legal significance of a word or phrase must be gleaned from the context it which it is used." *Natural Resources Defense Council v. Gorsuch,* 685 F.2d 718, 727 (D.C.Cir.1982), *citing Wilson v. Johns-Manville Sales Corporation,* 684 F.2d 111, 118 and n. 36 (D.C.Cir.1982).

A. Use of "conclusively"

■ The Board negated plaintiff's contention that the polygraph results "persuasively and conclusively establish that (plaintiff) sincerely believed he was entitled to the funds he received." *See* brief in support of request for reconsideration of application for correction of military records, A.R. 3, at 82, 83. The Board noted previously plaintiff's allowance of insufficient time for delays and the personal nature of the trip. Plaintiff's subjective sincerity did not undermine that reasoning. The Board concluded that the polygraph results did not in any event satisfy the standard for correction. A perusal of the record shows that the Board did not use "conclusively" in the context of establishing a burden of proof for polygraph examinations greater than the required "probable material error or injustice" standard.

B. "Irrebuttable presumption"

■ By noting that Major Moore had hired a polygraph examiner, the Board did not formulate an irrebuttable presumption against consideration of such tests. The Board was entitled to consider the fact that plaintiff arranged the examination in its evaluation of the polygraph results. *Cf. United States v. Alexander,* 526 F.2d 161, 164 (8th Cir.1975) (noting that all United States courts of appeals addressing the issue have excluded the results of unstipulated polygraph tests).

C. Sufficiency of Reasons

■ The Board's determination in December 1981 was its fourth review of plaintiff's Article 15. The only new evidence presented this time was the polygraph examination. A more detailed discussion of the reasons for finding no "probable material error or injustice" would have been

preferred. In a case not involving such doubtful evidence as an unstipulated polygraph examination, the Court would remand to the Board for a more complete discussion. Here, the burden of explanation was lessened further because the Board provided an adequate statement of reasons at the time it denied plaintiff's previous applications. *See Roelofs v. Secretary of the Air Force,* 628 F.2d 594, 601 (D.C.Cir. 1980) (burden of stating findings or explaining reasoning "is lessened if the agency provides at least some statement of reasons at the time it takes its actions"). While the Board's latest determination lacks precision and clarity, the record does not show material factual or legal error sufficient to "overcome the strong, but rebuttable, presumption that administrators of the military, like other public officers, discharge their duties correctly, lawfully, and in good faith." *Sanders v. United States,* 594 F.2d 804, 813, 219 Ct.Cl. 285 (1979).

### D. Weight of the evidence

■ This is not a case where the Army has admitted an improper evaluation of an officer's conduct. *Cf. Sanders v. United States, supra,* at 808 (four erroneous OERs acknowledged but not removed from file either through mistake or inadvertence); *Skinner v. United States,* 594 F.2d 824, 827–28, 219 Ct.Cl. 322 (1979) (agency acknowledged that plaintiff's rating was improperly influenced downward); *Yee v. United States,* 512 F.2d 1383, 1386, 206 Ct.Cl. 388 (1975) (Air Force failed to explain adequately five-year gap in plaintiff's OERs caused by its illegal discharge of plaintiff).

Major Moore has an exemplary service record and has handled innumerable other vouchers without controversy. *See generally,* A.R. 2. However, the Army and the Board simply did not credit his explanation for submitting a particular voucher. That determination was not a "gross material error of fact or an action contrary to all (the) evidence." *Sanders, supra,* 594 F.2d at 813. A court may disagree with a correction board about whether or not a specific situation was unjust, but it will not sub-

stitute its judgment for the board's where, as here, "reasonable minds could reach differing conclusions." *Id.,* at 814.

Accordingly, the Court affirms the decision of the Board appealed by Major Moore.

■ Plaintiff has moved to strike defendant's motion for failure to file a statement of material facts pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 1–9(h). The Court denies this motion. Other appeals from the Board have been resolved upon Rule 7(b)(1) motions. *See, e.g., Heisig v. Secretary of the Army,* No. 82–1060 (D.D.C. November 19, 1982) (memorandum and order). The Court is restricted to the administrative record. In such a case, a court may order judgment on the pleadings pursuant to Rule 12(c) or may grant an order pursuant to a motion under Rule 7(b)(1). *See Igonia v. Califano,* 568 F.2d 1383, 1389 (D.C.Cir.1977). A statement of material facts under Local Rule 1–9(h) is required only with motions for summary judgment.

An appropriate order accompanies this opinion.