**Brian P. SLESINSKI, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 95–260C.**

United States Court of Federal Claims.

Oct. 10, 1995.

Raymond C. McRorie, Fayetteville, NC, for plaintiff. Mark L. Waple, Waple & McRorie, of counsel.

Jennifer M. Hong, Washington, DC, with whom was Assistant Attorney General Frank W. Hunger, for defendant. Lieutenant Colonel David L. Hayden and Major Douglas Mickle, Department of the Army, Office of the Judge Advocate General, of counsel.

## *ORDER*

MILLER, Judge.

This case is before the court on cross-motions for summary judgment. The issue is whether a military board for correction of records improperly denied plaintiff's application to correct his records to allow for physical disability retirement status. Argument is deemed unnecessary.

## FACTS

The following facts, drawn from the administrative record, are undisputed. Brian P. Slesinski ("plaintiff") entered into active duty in the United States Army (the "Army") on November 15, 1979. On January 18, 1989, plaintiff was injured during a military parachute jump. On the same day, he was admitted to the Cutler Army Community Hospital, where he was immediately examined and re-

ferred to the physical therapy department upon a preliminary diagnosis that he had suffered a "L1 Compression" injury to his spine. A radiological examination showed "a compression fracture involving the first lumbar vertebra probably recent.... The lower lumbar spine and coccyx show no significant bone or abnormality." On January 19, 1989, Physical Therapist Edward C. Meier noted that plaintiff complained of "moderate pain in back." On January 20, 1989, plaintiff was discharged from the hospital and was told that he could return to work in 30 days and resume physical training in three months, as long as he used a hypertensive brace.

For several months after discharge, plaintiff continued to receive out-patient orthopedic treatment for back pain. On August 3, 1989, plaintiff was evaluated at the Orthopedic Clinic at the Cutler Army Hospital by Dr. Michael Kowalski, who noted plaintiff's discomfort, tenderness, and limitation of range of motion in his L–S (lumbro-sacral) back and right SI (sacro/iliac) joint. On August 29, 1989, plaintiff underwent a physical examination for the Medical Evaluation Board (the "MEB") to assess the extent of the injuries he suffered from the January 18, 1989 accident. Plaintiff was examined by Dr. Joseph N. Wilson, who found:

> Patient currently has problems with lifting greater than 30 pounds, sitting for greater than 1 hour and standing. The patient must move about when standing.... He can run less than 1 mile and after that time it hurts for approximately two days.
>
> ... Neurologic exam of the lower extremities are [sic] normal with normal deep tendon reflexes, normal sensation and a grossly normal strength.... He has a palpable small gibbus at the L1 level with some mild pain with deep palpation.
>
> ....
>
> ... X-rays show an L1 anterior compression fracture of approximately 30% which appears stable.

The results of this examination were reported to the MEB, which then recom-

mended that plaintiff be referred to the Physical Evaluation Board (the "PEB") for further action. At the time of this recommendation, plaintiff expressly agreed to the accuracy of the MEB's findings. On September 12, 1989, plaintiff was referred to the PEB because he was unable to perform the tasks assigned to him. On September 28, 1989, an informal PEB reviewed the MEB determination and other relevant records and determined that plaintiff suffered from a "L1 compression fracture 30%, stable, continuing symptimatic [sic] with limitation of motion." The PEB consulted the Veterans Administration Schedule for Rating Disabilities (the "VASRD") and recommended a disability rating of 10 percent.[1] On October 5, 1989, plaintiff elected to accept the findings of the informal PEB, thus waiving his right to a hearing. On October 26, 1989, plaintiff was separated for physical disability and was medically discharged from the Army with a disability rating of 10 percent.

After his discharge plaintiff complained of continual spinal pain and discomfort, and he independently sought diagnosis and treatment from several other physicians. On December 6, 1990, Dr. W.D. Ahmad conducted electromyographic studies of the L5/S1 area of plaintiff's spine and found no evidence of injury. On January 2, 1991, plaintiff sought a diagnosis from Dr. John Wong, who found: "At the level of the vertebral L1, there is irregular sclerosis at the superior and anterior aspect consistent with [an] old compression fracture. There [are] no other significant abnormalities seen." Plaintiff sought a further diagnosis from Dr. J. Easterbrook on April 15, 1991, who found that "[t]here is mild ventral compression of the L1 vertebral body...." On June 11, 1991, plaintiff had a discogram performed, which revealed a problem with the L5/S1 area of his spine. Based on plaintiff's complaints of spinal pain and discomfort, the Department of Veterans Affairs (the "VA") by letter dated December 23, 1991, changed plaintiff's disability rating, stating: "Based on an increase in the severity of your service-connected disability, your

---

1. The PEB went on to say:

The PEB considers the proper disposition to be separation with severance pay. [Disability]

[r]atings of less than 30% for soldiers with less than 20 years retirement service require separation with severance pay in lieu of retirement.

evaluation is increased...." to 50 percent.[2] On February 6, 1992, plaintiff underwent surgery and had a L5 decompressive hemilaminectomy with L5/S1 fusion performed.

On April 16, 1991, and again on September 30, 1992, plaintiff filed an application to the Army Board for the Correction of Military Records (the "ABCMR"), seeking correction of his military records to reflect medical retirement, rather than separation for physical disability. Plaintiff argued that he had suffered an injury from the parachute accident that entitled him to a disability percentile greater than 10 percent because of the damage to the L5/S1 region of his spine. On March 5, 1993, the ABCMR requested that the United States Army Physical Disability Agency (the "USAPDA") review the merits of plaintiff's claim. On July 2, 1993, the USAPDA determined, through an advisory opinion, that the Army made no error in the discharge status of plaintiff.[3] Plaintiff was informed of this advisory opinion by letter dated July 8, 1993.

On September 22, 1993, plaintiff's counsel responded to the advisory opinion by providing the ABCMR with supplemental materials. On October 15, 1993, the ABCMR requested the USAPDA again to review plaintiff's application, with special emphasis on the recently provided information. On March 21, 1994, the USAPDA issued a second opinion, again finding that plaintiff was diagnosed properly and rated for his disability.[4] On April 20, 1994, the ABCMR voted to deny plaintiff's application stating:

1. The applicant was referred to a PEB because of residuals of an L1 compression fracture. At that time the examining physician wrote ... that although the applicant had experienced numbness in his right leg on occasion, that problem had resolved. Additionally, a neurologic examination at that time was normal. Therefore, there was no basis on which to award a rating for a neurologic condition.

2. There is no indication in the available medical records that the applicant suffered [at the time of the PEB] from a L5–S1 disk condition, or of any other medically unfitting condition....

Finally, the ABCMR noted that plaintiff was fully apprised of his right to a formal PEB when he elected to accept the findings of the informal PEB. Plaintiff now seeks judicial review contending that the ABCMR's decision was arbitrary, capricious, or unsubstantiated by sufficient evidence.

## DISCUSSION

1. *Statutory and procedural requirements*

The Army discharged plaintiff pursuant to the Physical Disability Evaluation System. Army Regulations ("AR") 635–40 (Dec. 13, 1985).[5] This system incorporates the VASRD. 38 U.S.C. § 1155 (1988 & Supp. V 1993), promulgated at 38 C.F.R. § 4.71a (1994). Under this system, when an Army physician believes that a soldier's injuries might warrant retirement or discharge, that physician may refer the soldier to a MEB. AR 635–40 at ¶ 4–6. The MEB is composed of two or more physicians who review the soldier's medical records and evaluate the extent of the soldier's injuries. The MEB meets informally and does not determine a

---

2. The VA originally gave plaintiff a VASRD disability rating of 20 percent.

3. The USAPDA based its finding on the fact that the MEB's 1989 decision depended on a vertebral fracture and limited range of motion in the spine and no evidence of a herniated disc. The USAPDA found the VA's evaluation of plaintiff's disability percentage unpersuasive because that evaluation was based on the existence of a herniated disc after plaintiff's separation for physical disability.

4. The USAPDA stated that plaintiff's disability rating should not be increased because of any evaluations by the VA:

The Army Physical Disability Evaluation System and the Veterans Administration view impairments differently.... The Army determines functional fitness of the soldier at the *time of evaluation*.... The Veterans Administration is charged with the responsibility to provide care and compensation for veterans *as the effects of time aggravate conditions.* (Emphasis in original.)

5. This is the version of the applicable Army regulations in effect at all times relevant to this case.

soldier's fitness for duty or his disability percentage; rather, it merely decides whether or not to refer a soldier to the PEB. AR 40–3, ¶¶ 7–1, 7–3, 7–7 (Feb. 15, 1985). A soldier has the option to accept the findings of the MEB or to rebut the findings and request reconsideration. AR 40–3, ¶ 7–17.

Once the PEB receives a case by referral, it initially meets informally to consider a soldier's case by reviewing the findings of the MEB and the patient's other medical records. No hearing is held. AR 635–40 ¶ 4–19. After such a review, the informal PEB makes its recommendation on whether a soldier is fit or unfit for duty. If a soldier is found to be unfit for duty, the PEB consults the VASRD and assigns the soldier a disability percentage. AR 635–40 ¶ 4–19(d)(1). The disability percentage rating determines, among other things, whether a soldier will be medically retired or separated with severance pay.[6] A soldier with less than 20 years of military service may be medically retired only if his disability rating is 30 percent or higher. 10 U.S.C. § 1201 (1988 & Supp. V 1993).

"No member of the armed forces may be retired or separated for physical disability without a full and fair hearing if he demands it." 10 U.S.C. § 1214 (1988). Consistent with this statutory directive, a soldier may either accept the informal PEB's determination or demand a hearing pursuant to a formal PEB. AR 635–40 ¶ 4–19. Once the PEB makes a final determination, either through a formal or an informal process, the PEB then forwards the case to the USAPDA, which determines whether the PEB's findings were fair, equitable, consistent with the facts, and in accord with the governing laws and regulations. AR 635–40 ¶¶ 4–21, 4–22. If a soldier is not satisfied with the PEB's decision, he may file an application with the ABCMR. The ABCMR was established to implement the Secretary of the Army's discretionary authority to correct a soldier's military records: "The Secretary of a military department may correct any military record of the Secretary's department when the Secretary considers it necessary to correct an error or remove an injustice." 10 U.S.C. § 1552(a)(1) (West Supp.1995), promulgated at 32 C.F.R. § 581.3 (1994). In making its determination, the ABCMR is authorized to refer issues presented to it to other agencies within the Army, such as the USAPDA, for the purpose of obtaining "investigative or advisory services." 32 C.F.R. § 581.3(h)(1)(ii). The ABCMR may deny an application for correction of military records if it finds there is insufficient evidence of a material error or injustice. 32 C.F.R. § 581.3(c)(5)(ii). "Such legal error includes the military's 'violation of statute or regulation, or published mandatory procedure, or unauthorized act [. . . .]'" *Dodson v. United States*, 988 F.2d 1199, 1204 (Fed.Cir.1993) (quoting *Skinner v. United States*, 219 Ct.Cl. 322, 333, 594 F.2d 824, 830 (1979)).

### 2. *Standard and scope of review*

■ This court cannot overturn a determination made by the military with respect to disability retirement absent a violation of a statute or regulation, *see Curry v. United States*, 221 Ct.Cl. 741, 746, 609 F.2d 980, 983 (1979), unless plaintiff shows "by cogent and clearly convincing evidence" that such a determination is arbitrary, capricious, or unsupported by substantial evidence. *Stephens v. United States*, 174 Ct.Cl. 365, 372, 358 F.2d 951, 954 (1966). "Judicial deference to administrative decisions of fitness for duty of service members is and of right should be the norm." *Maier v. Orr*, 754 F.2d 973, 984 (Fed.Cir.1985). In addition, the Federal Circuit has noted:

It is equally settled that responsibility for determining who is fit or unfit to serve in the armed services is not a judicial province; and that courts cannot substitute their judgment for that of the military departments when reasonable minds could reach differing conclusions on the same evidence.

*Heisig v. United States*, 719 F.2d 1153, 1156 (Fed.Cir.1983) (footnotes omitted) (involving disability claim). Furthermore, it is "singu-

---

6. Soldiers who are medically retired, as opposed to separated with severance pay, receive more

lucrative retirement benefits.

larly inappropriate to second-guess the judgment of the military medical officers ...." *Voge v. United States,* 844 F.2d 776, 780 (Fed.Cir.), *cert. denied,* 488 U.S. 941, 109 S.Ct. 365, 102 L.Ed.2d 355 (1988).

■ When determining whether a decision is arbitrary and capricious, the court examines whether the decision was "based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971). The role for the court on review "is to determine not whether the claimant was unfit for service at the time of his release, but rather whether the finding of the Secretary ... was so arbitrary, capricious, or unsupported by evidence as to be contrary to the applicable principles of law." *Johnston v. United States,* 157 Ct. Cl. 474, 475–76 (1962).

### 3. *Review of ABCMR decision*

■ Plaintiff contends that the decision by the ABCMR was arbitrary, capricious, and not supported by substantial evidence. The burden is on plaintiff to show by clear and convincing evidence, that the ABCMR did not look at the relevant evidence and made a clear error. *Stephens,* 174 Ct.Cl. at 372, 358 F.2d at 954.

■ Plaintiff has not produced sufficient evidence that the Army failed to comply with the rules and regulations governing the evaluation and assignment of disability ratings for military personnel to invalidate the decision of the ABCMR. *See, e.g.,* AR 635–40; AR 40–3. Moreover, the Army's decision to assign plaintiff a disability rating of 10 percent is consistent with the evidence in the record of plaintiff's physical condition at the time of his separation for physical disability. Under the VASRD an individual who suffers from mild limitation of motion of the lumbar spine should be assigned a disability rating of 10 percent. 38 C.F.R. § 4.71a. When plaintiff was examined on January 18, 1989, the date of his accident, he was found to have moderate back pain; however, it was also determined that his "lower lumbar spine and coccyx show no significant bone or abnormality." When plaintiff was discharged from the hospital, he was told he could return to work in 30 days and resume physical training in three months. Several months later, when examined for the MEB by Dr. Wilson, although plaintiff was suffering spinal discomfort, Dr. Wilson found "[n]eurologic exam of the lower extremities are [sic] normal...." On September 28, 1989, the PEB, after examining all the relevant evidence, concluded that plaintiff suffered from a "L1 compression fracture 30%, stable, continuing symptimatic [sic] with limitation of motion." All of these findings are consistent with the assignment of a 10–percent disability rating.

While it is true that, after plaintiff's separation for physical disability, he eventually was diagnosed with a L5/S1 spinal injury and, on December 23, 1991, the VA increased his disability rating to 50 percent, the only relevant issue is the nature and extent of plaintiff's injury at the time of his separation for physical disability. As the ABCMR stated in its April 20, 1994 decision:

An award of a higher VA rating does not establish error or injustice in the Army rating. Although both the Army and the VA use the VA Schedule for Rating Disabilities, the Army disability rating is intended to compensate the individual for interruption of a military career because of an impairment. The VA awards ratings because a medical condition affects the individual's civilian employment. Furthermore, while the Army must determine an appropriate permanent disability rating before the individual can be separated from the service, the VA can evaluate a veteran throughout his or her lifetime, adjusting the percentage of disability....

Thus, the issue is whether, at the time of plaintiff's separation for physical disability, the record contained sufficient evidence of a L5/S1 spinal injury to make the decision of the ABCMR denying a higher disability rating arbitrary, capricious, and not supported by substantial evidence. The court concludes that plaintiff has not met his burden on this issue because sufficient evidence does not appear in the record of a L5/S1 spinal injury at the time of plaintiff's separation for physical disability so as to render the ABCMR's decision improper.

When the ABCMR made its determination on April 20, 1994, it stated that "[t]here is no indication in the available medical records that the applicant [plaintiff] suffered from an L5–S1 disk condition, or of any other medically unfitting condition . . . at the time of his PEB." Plaintiff argues that this statement is incorrect in light of the July 2, 1993 USAPDA advisory opinion and Dr. Kowalski's August 3, 1989 diagnosis.[7] However, neither of these documents provides evidence of a L5/S1 injury at the time of plaintiff's separation for physical disability. The relevant section of the July 2, 1993 USAPDA advisory opinion discusses the basis of the VA's decision to increase plaintiff's disability rating: "The VA rating was made 2 years later [after the MEB], prior to surgery and the herniated disc was well documented. There is no objective evidence presented that the defect was present when the original MEB was completed." This statement does not provide evidence that a L5/S1 spinal injury existed at the time of plaintiff's separation for physical disability.

Similarly, Dr. Kowalski's diagnosis provides no support for plaintiff's contention. Dr. Kowalski examined plaintiff on August 3, 1989, and found plaintiff "[s]till w[with] moderate limitations/non radicular discomfort L–S back/R SI [right sacroiliac] joint tender to palp [palpitation] & ROM [range of motion] over L–S back and R SI jt [joint], no radiation, still w[with] some LROM [limited range of motion]."[8] This diagnosis certainly makes reference to plaintiff's spinal discomfort, but it does not specifically state that a L5/S1 spinal injury existed at the time of the examination, nor does it indicate that a sufficiently severe spinal injury existed at the time of the examination, such that the ABCMR's statement that "[t]here is no indication in the available medical records [of] . . . an L5–S1 disk condition. . . ." is incorrect.

For plaintiff to prevail he has the burden to show by clear and convincing evidence that the decision of the ABCMR was arbitrary, capricious, or unsupported by substantial evidence. *See, e.g., Curry,* 221 Ct.Cl. at 746; *Stephens,* 174 Ct.Cl. at 371–72, 358 F.2d at 954. Plaintiff has failed to meet this burden because 1) the Army complied with all procedures required by the relevant statutes and regulations and 2) insufficient evidence appears in the record that plaintiff suffered from a L5/S1 spinal injury at the time of his separation for physical disability. The mere fact that after his separation for physical disability plaintiff was diagnosed with a more severe spinal injury does not make the decision of the ABCMR not to increase his disability rating arbitrary, capricious, or unsupported by substantial evidence. Rather, plaintiff must show that this severe spinal injury existed at the time of his separation for physical disability, which he has failed to do.

**CONCLUSION**

Accordingly, based on the foregoing, defendant's motion for summary judgment is granted and plaintiff's cross-motion is denied. The Clerk of the Court shall dismiss the complaint.

**IT IS SO ORDERED.**

No costs.

---

7. The court entered an order on August 22, 1995, specifically requiring defendant to address in its final brief whether Dr. Kowalski's evaluation was considered by the ABCMR in arriving at its determination.

8. Plaintiff argues that Dr. Kowalski's handwritten diagnosis states that plaintiff suffered from discomfort in his "L–5 back." However, it is clear from examination of the document that Dr. Kowalski wrote "L–S," not "L–5."