**Ross J. LANINGHAM, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 494–85C.**

United States Court of Federal Claims.

Jan. 5, 1994.

OPINION

REGINALD W. GIBSON, Judge:

*INTRODUCTION*

This docketed military pay case is the continuation of a protracted saga relating to disability entitlements of an officer in the United States Naval Reserve.[1] Two previous opinions have issued under docket no. 109–81C, dated May 31, 1983, and April 13, 1984, which provided certain relief (disability pay and allowances) to plaintiff pursuant to a Notice of Eligibility (NOE). The former opinion(s) held and directed that:

> ... plaintiff shall continue to be paid such disability pay and allowances until the same is properly terminated pursuant to applicable law and regulation.

Because defendant, on June 8, 1983, caused plaintiff's separation from the service, thereby cancelling the plaintiff's commission and denying, after June 1, 1983, the disability benefits reinstated by this court on May 31, 1983, by this action plaintiff prays for an order, *inter alia,* voiding the discharge and reinstating the NOE to continue, including his disability benefits, until properly terminated pursuant to applicable law. To facilitate the reader's understanding of the present issues, we refer you to this court's prior opinions under docket no. 109–81C. *Laningham v. United States,* 2 Cl.Ct. 535 (1983), and *Laningham v. United States,* 5 Cl.Ct. 146 (1984). The facts will, therefore, be explicated here only to the extent necessary for an understanding of the issues raised herein.

*FACTS*

On September 30, 1961, plaintiff was enlisted in the U.S. Naval Reserve. Thereafter, on February 21, 1967, he entered upon extended active duty as a Naval Flight Officer candidate and was commissioned in May 1967. Plaintiff completed Naval Flight Offi-

John A. Luchsinger, Media, PA, attorney of record for plaintiff.

John S. Groat, Washington, DC, with whom was Asst. Atty. Gen. Frank W. Hunger, for defendant.

1. In a memorandum by the Assistant Secretary of the Navy, Mr. Chase Untermeyer, dated August 13, 1986, to the Executive Director, Board For Correction Of Naval Records, he stated that—"I recognize that [plaintiff's] ... case was ineptly processed through the Disability Evaluation System." Administrative Record, Vol. II (AR II) at 130. (In this case, there are four Administrative Record portions labeled I through IV and a fifth labeled Supplemental and indicated as "Suppl.")

Additionally, in plaintiff's motion for summary judgment and brief dated August 31, 1990, counsel states (at p. 8) that—"defendant ignored this Court's order of May 31, 1983 and unlawfully terminated plaintiff's disability benefits by effecting plaintiff's honorable discharge."

cer Training in May 1968 and was designated a Naval Flight Officer. Following thereon, he served on active duty for approximately four and one half years. Upon his release from active duty, plaintiff was affiliated with the Naval Air Reserve Unit (NARU), Norfolk, Virginia.

Plaintiff was injured in an accident that occurred while on authorized liberty status during a period of active duty for training (ACDUTRA) on June 9, 1978. On September 6, 1979, he was issued an NOE which allowed him to receive disability payments and appropriate medical treatment. Since the issuance of his NOE and the filing of his complaint under the prior docketed case (no. 109–81C), plaintiff has not been restored to his normal flight duties or any other duties. In fact, his disability benefits (*i.e.*, pay and allowances to be received under the NOE) were initially terminated as per direction of the Physical Evaluation Board (PEB) after a finding of "fit for duty" on June 30, 1980. Subsequently, plaintiff was assigned to Physical Risk Category 5 (not physically qualified/suitable for retention in Naval service by reason of injuries from accident). Given the foregoing, plaintiff sued defendant in this court, in predecessor case no. 109–81C.

Alleging therein that he was prejudiced and that defendant, having violated its own regulations and the applicable statutes by finding him "fit for duty" and terminating his NOE, plaintiff argued that defendant should be forced to compensate him according to law. Plaintiff, therefore, requested that the following be provided in the prior docketed case:

1. Restore pay and allowances received under the NOE.
2. Disability pay for the period June 9, 1978 through September 5, 1979 prior to issuance of NOE.
3. Retirement credits and the monetary equivalent for lost benefits.
4. Punitive damages.
5. Costs and attorney's fees.

In disposing of that case, this court held on May 31, 1983, that defendant violated its own regulations in finding plaintiff "fit for duty" and by terminating plaintiff's pay and allow-

ances under his NOE. *Laningham,* 2 Cl.Ct. 535. In such circumstances, the Navy had two schemes for the determination of fitness for duty. The first, under 10 U.S.C. § 1201 *et seq.,* established a Disability Evaluation System (DES) by which *fitness for duty* was definitively determined by an ability to perform military duties *in general.* However, such classification did not include "special duties" such as flight duty, to which plaintiff was normally assigned, so plaintiff was found "fit for duty" by evaluation of the PEB operating under the guidance of the Disability Evaluation Manual (DEM). The Navy also promulgated SECNAVINST 1770.3 which established a specialized standard of fitness for duty to *include* fitness for normally assigned duties. We held in docket no. 109–81C that since plaintiff was not fit for *flight* duty, he was not fit for his "normally assigned duties," and, therefore, defendant had violated its own regulation, SECNAVINST 1770.3, by evaluating plaintiff "fit for duty" under the DES. *Laningham,* 2 Cl.Ct. at 550.

Consequently, the court ordered that plaintiff's NOE be reinstated until a final disposition of plaintiff's claim according to law. In the absence of any regulation or statute defining "final disposition" as used in SECNAVINST 1770.3, we determined that such would occur when plaintiff was separated from the Navy for reason of unfitness or retirement for disability under the disability retirement laws. *See* 2 Cl.Ct. at 550. As to the request for retirement credits and the monetary equivalent of other benefits not received, the court held that plaintiff was not entitled to make such claims in court because they had not been raised at the administrative level. Further, we also held that punitive damages were inappropriate in this context since such damages cannot be adjudicated against the United States. Finally, we held that plaintiff would have to comply with the explicit provisions of the Equal Access to Justice Act (EAJA) in order to receive any entitled attorney fees.

Following the determination of liability by summary judgment, the only issue litigated was as to the question of the appropriate damages plaintiff should receive. The court

held that plaintiff should be awarded all basic pay and allowances for quarters and subsistence, as Commander, as of October 1, 1981, and as Lieutenant Commander prior to that time, because the court found that plaintiff had, in fact, been promoted to the rank of Commander. However, we denied the award of Variable Housing Allowance, Aviation Career Incentive Pay, Aviation Officer Continuance Pay, and Hospitalization Pay. This decision was issued on April 13, 1984. 5 Cl.Ct. 146 (*Laningham* II).

After the court's decision on May 31, 1983, requiring reinstatement of the NOE and disability pay and allowances thereunder, the Navy immediately reprocessed plaintiff through its DES and found plaintiff "fit for duty" and thereafter effected his discharge as of June 1, 1983. Plaintiff then challenged this discharge before the Board for Correction of Naval Records (BCNR) seeking *both* reinstatement of his NOE and constructive service credit for reserve training duties *which he did not perform*. The Board denied his application, and plaintiff applied for reconsideration. The BCNR, upon reconsideration, recommended on March 19, 1986, that the June 1, 1983 discharge of plaintiff be voided *ab initio*. They also recommended a correction of plaintiff's records to indicate that the NOE "was never terminated"; that plaintiff receive *de novo* consideration by the DES; that the membership of each Board be entirely new; that the records of DES be excluded from consideration; and that plaintiff's records show that he was promoted to Commander effective October 1, 1981. The balance of plaintiff's application was denied, including the request for constructive service credit.

Following the foregoing, the Assistant Secretary (AS) of the Navy then performed a *de novo* review of said BCNR recommendations. In a memorandum dated August 13, 1986, the AS disapproved the BCNR recommendations to void the discharge and to reinstate the NOE. Instead, the AS recommended that plaintiff's case be processed through the DES to determine what benefits plaintiff was entitled to receive. He also recommended that the Medical Board be convened to determine plaintiff's physical condition on the date

of his separation, *i.e.*, June 1, 1983. On June 24, 1987, the Medical Board determined that plaintiff was "fit for duty" as of June 1, 1983. The report was sent, with plaintiff's rebuttal, to the Naval Medical Command which, in turn, sent it to the President of the Central Physical Evaluation Board (CPEB). On August 4, 1987, the CPEB recommended the finding of "fit for duty." On August 17, 1987, the recommendation was accepted.

Later, on August 8, 1988, the AS forwarded a new directive to the BCNR regarding plaintiff. Because of the CPEB findings, the AS approved the BCNR recommendation to void plaintiff's discharge of June 1, 1983, but disapproved the BCNR's recommendation to reinstate plaintiff's NOE. Finally, the AS directed the Naval Military Personnel Command (NMPC) to review plaintiff's records and "determine the reserve/drill status" that plaintiff would have enjoyed but for the discharge and the correction of his record accordingly. By July 18, 1988, the NMPC followed the AS's recommendation and estimated the drill and ACDUTRA credit plaintiff would have earned and then recommended amending his record to provide constructive service credit and the award of pay and allowances flowing therefrom. On August 1, 1988, the *new* AS approved the NMPC's corrective action.

On January 26, 1988, the Secretary of the Navy, however, ordered reconsideration of the BCNR cases where the *former* AS had failed to follow the BCNR recommendations because he believed the *former* AS had improperly relied on uninformed personnel advice in making his decisions. Consequently, plaintiff's case before the BCNR was reviewed again in that context.

Pursuant to that directive, the General Counsel of the Navy reviewed the plaintiff's case and approved, *without modification,* the *original* BCNR recommendation of March 19, 1986 (*i.e.*, to reinstate the NOE and not provide any constructive service credit, which was the opposite of the AS's final decision, *i.e.*, to provide constructive service credit and not to reinstate the NOE). The BCNR chairman later requested the Secretary's guidance because the General Counsel's actions required voiding the constructive ser-

vice credit already awarded. The BCNR chairman recommended that the plaintiff choose between the two corrective actions, *i.e.,* constructive service credit and reinstatement of the NOE. The Secretary approved this BCNR recommendation, and plaintiff, by letter dated *September 24, 1989,* chose the relief recommended by the BCNR, *i.e.,* reinstatement of his NOE, but noted that it was only partial relief and he did not waive his rights in this court.

On October 10, 1989, the BCNR chairman cancelled the AS's previous corrective action (constructive service credit award). On May 18, 1990, the NMPC Counsel recommended to the General Counsel that no further action be taken to implement the original BCNR recommendation of reinstating the plaintiff's NOE (because 10 years on an NOE is not what the program contemplated). The General Counsel replied to NMPC, on September 6, 1990, rejecting its recommendation. On that date, he recommended implementing the reinstatement of plaintiff's NOE and other original BCNR recommendations.

*PARTIES' CONTENTIONS*

### I. *Plaintiff*

Plaintiff raises eight (8) contentions in his complaint and brief accompanying his motion for summary judgment. The first, and clearly most important contention to plaintiff, is his argument that the NOE, issued to plaintiff on September 6, 1979, and terminated June 1, 1983, *after* this court's prior holding on May 31, 1983, should be reinstated retroactively to June 1, 1983, and all pay and allowances appropriately due plaintiff thereunder should also be ordered. Plaintiff further contends that defendant wrongfully terminated his NOE; that termination was an arbitrary and capricious act by defendant; that though the BCNR recommended the reinstatement of the NOE, the AS overruled that position in spite of the fact that relevant statutes require the reinstatement; and that the Secretary is bound by the decision of the BCNR where, as here, that decision is fully supported by the substantial weight of the evidence.

Second, plaintiff contends that the reinstatement of his NOE is only "half-a-loaf" of relief, and that the court should also order the defendant to award him a correction of his records to include constructive credit for duties he did not actually perform during the time since his NOE was issued. He alleges that the BCNR's reinstatement of his NOE has not made him whole, as is required by case law, once the BCNR has determined that plaintiff has been wronged.

Third, plaintiff argues that defendant should be enjoined from terminating plaintiff prior to his earning sufficient credits toward retirement for length of service. According to plaintiff, he has 18 years of service credits in his record. He thus argues that the statutes indicate that once a naval reservist has earned 18 years of service credit, he must be permitted to complete two more years, enabling him to retire for length of service at 20 years at age 60 under 10 U.S.C. §§ 1163(d) and 1331.

Plaintiff contends, fourthly, that the court should enjoin defendant from using its DES to evaluate plaintiff's condition. He argues that our last opinion held that the utilization of the DES with regard to its standard for fitness for duty was in violation of the Navy's own regulation. Therefore, avers plaintiff, the DES should not be used again to evaluate him. Plaintiff also contends that the DEM was improperly promulgated in that it was never submitted for review by the Department of Defense Military Pay and Allowance Committee.

The fifth argument raised by plaintiff concerns his transfer to Records Review, a non-pay status. Plaintiff argues that this transfer was an arbitrary and capricious action by the defendant. Moreover, plaintiff contends that he was processed in violation of applicable statutes and regulations.

Sixth, plaintiff alleges that, because he was a reservist who was serving on active duty for less than 30 days and not a reservist on extended active duty or a regular Navy personnel, his NOE was terminated. He thus argues that, because of 10 U.S.C. § 6148, plaintiff is entitled to disability pay and allowances. Plaintiff was illegally discharged on June 1, 1983, and though this was voided, his NOE, as of the time of his brief, has not been reinstated. Thus, plaintiff alleges that

the Navy has discriminated among and between reservists and regulars in violation of 10 U.S.C. § 277.

Next, plaintiff alleges that defendant has denied him the pay and allowances due him at the grade of Captain. This conclusion is premised on the contention that he was in fact promoted to the grade of Captain but that the Navy refuses to recognize its own promotion.

Finally, plaintiff contends that the defendant was arbitrary and capricious in attempting to enforce retroactive measures against him. Plaintiff argues that we, in our prior opinion(s), held that retroactive action against plaintiff was in violation of the applicable laws and regulations.

## II. *Defendant*

Defendant forms its opposition response into six contentions. First, defendant argues that plaintiff's contention for reinstatement of his NOE is moot because the Navy's General Counsel has already ordered reinstatement of the NOE by letter dated September 6, 1990. Next, defendant argues that plaintiff has no claim to constructive service credit for duties plaintiff has not performed because he has no entitlement to such under the Tucker Act. Defendant further contends that there is no recoverable claim for relief where there is no entitlement to that relief under the applicable regulations. Defendant cites to a United States Court of Appeals for the Federal Circuit case, *Banks v. Garrett,* 901 F.2d 1084, 1087 (Fed.Cir.1990), which indicates that plaintiff's entitlement to service credit on his record only includes *credit for duties actually performed.*

Thirdly, defendant responds to plaintiff's argument that it should be enjoined from evaluating plaintiff under its DES. Defendant contends that plaintiff's argument that the DEM was improperly promulgated is moot and without merit. It further argues that since this position was raised in support of plaintiff's challenge to the AS's denial of the reinstatement of plaintiff's NOE, the issue is moot in light of the fact that the NOE has been reinstated.

Defendant's fourth argument relates to plaintiff's claim against it with regard to plaintiff's transfer to Records Review status. Here, defendant contends that the court does not have jurisdiction over this transfer inasmuch as the claim has no monetary consequence.

Fifth, defendant responds to plaintiff's claim of discrimination by the Navy in violation of 10 U.S.C. § 277. Here, it argues that 10 U.S.C. § 277 specifically addresses only statutes and regulations which apply to *both* regular Navy personnel as well as to Navy Reserve personnel.

Finally, defendant contends that it is not required to recognize plaintiff as having been promoted to the grade of Captain, nor must they consider him for such promotion. Defendant argues that plaintiff's so-called "prima facie" evidence of promotion is merely evidence of administrative error and does not satisfy plaintiff's required burden of proof.

## ISSUES

The court finds that, based on the parties' submissions, there are four separate issues that must be addressed. The first issue concerns whether the defendant has complied with or violated the court's order of May 31, 1983, continuing plaintiff's disability pay and allowances until properly terminated pursuant to applicable law and regulation. This issue, *inter alia,* addresses the propriety of the reinstatement of the NOE. The second issue is whether defendant acted arbitrarily and capriciously when transferring plaintiff involuntarily to Record Review status. The next issue concerns whether the defendant improperly discriminated against Navy reservists in violation of 10 U.S.C. § 277. The last issue is whether plaintiff has been promoted to the grade of Captain or, in the alternative, whether this court may order that defendant's Officer Promotion Board consider plaintiff for promotion to the grade of Captain.

## DISCUSSION

### I. *Scope and Standard of Review*

■ This case involves the court's review of a series of administrative decisions made by the BCNR, and by the Navy's Assistant Secretary and General Counsel with regard

to the disposition of plaintiff's case relating to disability pay and allowances. The actions taken by these agents of the defendant, by its own admission, were based on alternative rejection and acceptance of a decision made by the BCNR on March 19, 1986. Therefore, it is that BCNR decision and its impact on plaintiff that is the focus of this opinion. Following this court's May 31, 1983 decision on liability, as previously noted, plaintiff was immediately discharged effective June 1, 1983. The BCNR initially approved that discharge. The second BCNR decision was made pursuant to plaintiff's letters of November 7, and December 6–9, 1985, in which plaintiff requested the BCNR to reconsider its decision approving his discharge. That was the March 19, 1986 decision by the BCNR which is the focus of our review. We recognize also that the decisions of the AS and the General Counsel of the Navy are also under review, however tangentially, because they reflect responses to the BCNR findings in the administrative record. It is important for us to begin our analysis, therefore, by explicating by what standard we must review the decision(s) of the BCNR. The law controlling review of BCNR rulings determines the standard of our review. In such circumstance, it is this court's duty, in record review cases as here, only to review the administrative record developed before the BCNR.

■ It is well settled that the standard of review in military cases is one of great deference. In short, and to prevail, the claimant must demonstrate that the BCNR's actions are arbitrary, capricious, or unsupported by substantial evidence, by proffering evidence which is cogent and clearly convincing. *Rogers v. United States*, 24 Cl.Ct. 676 (1991). The United States Court of Claims, our predecessor court, elaborated on the role of Correction Boards and the proper scope of the court's review of their actions under 28 U.S.C. § 1491 in *Sanders v. United States*, 219 Ct.Cl. 285, 289, 594 F.2d 804, 811 (1979), wherein it stated that:

Congress has acted by providing servicemen with an administrative remedy for their wrongs. Once plaintiff has sought relief from [a] Correction Board, such

plaintiff is bound by that board's determination unless he can meet the difficult standard of proof that the Correction Board's decision was illegal because it was arbitrary, or capricious, or in bad faith, or unsupported by substantial evidence, or contrary to law, regulation, or mandatory published procedure of a substantive nature by which plaintiff has been seriously prejudiced, and money is due.

The Court of Claims has also held that for plaintiff to merit judicial consideration of and relief from actions of a Correction Board he or she must show "an unlawful act made so by violation of a statute, or regulation, or mandatory published procedure, or an unauthorized act. ..." *Skinner v. United States*, 219 Ct.Cl. 322, 333, 594 F.2d 824, 830 (1979). Further, the court held that the Board's actions must be "so unsupported by the evidence as to be a gross injustice, unlawful because of clear legal or factual error, manifest abuse of discretion, or arbitrary and capricious action amounting to bad faith or fraud, and seriously prejudicial." *Skinner*, 219 Ct.Cl. at 333, 594 F.2d 824. Therefore, that court concluded that, "we will not substitute our judgment for the board's when reasonable minds could reach differing conclusions." *Sanders*, 219 Ct.Cl. at 302, 594 F.2d 804.

■ Against this background, it is a well-settled principle of law that the U.S. Claims Court[2] has jurisdiction over military pay cases involving parties who allege that they are due back pay because a military Correction Board violated its statutory mandate in failing to correct legal and factual errors in the record and/or removing prejudicial injustices. *Id.* We also find that the foregoing supports the proposition that those final and binding decisions made by the General Counsel and the AS, in furtherance of processing plaintiff's claims based upon a resolution of the BCNR, are also given the same weight as resolutions of the BCNR. Together, they comprise the "administrative decision" of the defendant as it relates to plaintiff's claims. Pertinent to the foregoing, the Court of Appeals for the Federal Circuit summarized as follows:

---

**2.** Now referred to as the U.S. Court of Federal Claims.

[R]eview of administrative decision is limited to determining whether the action was arbitrary, capricious, in bad faith, or unsupported by the evidence, or contrary to law, regulation, mandatory published procedure of a substantive nature by which the [complainant] has been seriously prejudiced.

*Heisig v. United States,* 719 F.2d 1153, 1156 (Fed.Cir.1983). In addition, there are strong policies which compel the court to allow the armed services the widest possible latitude in administering their personnel matters.[3] Consequently, we observe that it is a rare case where plaintiff can overcome these heavy burdens. *See, e.g., Doggett v. United States,* 207 Ct.Cl. 478, 483 (1975); *Skaradowski v. United States,* 200 Ct.Cl. 488, 471 F.2d 627 (1973); *Hertzog v. United States,* 167 Ct.Cl. 377, 383–84, 1964 WL 8548 (1964). In reaching our ultimate conclusion, on this record, we were, of course, fully mindful of the foregoing standards and restrictions.

II. *Summary Judgment*

 Pursuant to RCFC 56(g), a decision on a motion for summary judgment is generally mandated if "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In this connection, judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* Initially, the movant has the onerous burden of showing that there are no issues of material fact and that it is entitled to judgment as a matter of law. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552. The nonmovant, on the other hand, must respond by producing affirmative evidence that a genuine issue of material fact does exist because an issue is determined to be "genuine, if and only if, on the entirety of the record, a reasonable jury could resolve a

factual matter in favor of the nonmovant." *Sweats Fashions, Inc. v. Pannill Knitting Co.,* 833 F.2d 1560, 1562 (Fed.Cir.1987). *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Once both parties have sufficiently set forth their positions, the court will then ask whether reasonable jurors could find by a preponderance of the evidence that the movant has met its burden and is entitled to judgment as a matter of law. *Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512. If so, the court may grant the motion.

It is clear in this case that plaintiff has established, on this record, that there are no genuine issues of material fact upon which he and the defendant differ. In fact, the court has compared and examined each party's version of the facts in this case and has found that there are no facts upon which the parties materially disagree. Moreover, there are no material facts in either recitation that are contradicted, even by inference, in the other party's rendition. Therefore, this court will proceed to decide the merits of plaintiff's claims.

III. *Issues and Conclusions*
　A. *Satisfaction of This Court's Order of May 31, 1983*

1. *Appropriate Processing of Plaintiff's Case: The Original BCNR Award of Relief vs. The Assistant Secretary's Determination*

It is *now* undisputed by the parties that plaintiff's June 1, 1983 discharge was illegal. The central dispute in this case, therefore, surrounds the methods defendant used to remedy this illegal discharge. Plaintiff thereafter applied to the BCNR, pursuant to 10 U.S.C. § 1552(a), for correction of his naval record to show that he was *not* discharged from the Naval Reserve as of June 1, 1983. On June 12, 1985, the BCNR denied this request. However, upon submission of new arguments,[4] the BCNR reconsidered

---

**3.** The standard of review in military discharge cases is one of great deference. *See Brown v. United States,* 184 Ct.Cl. 501, 503, 396 F.2d 989 (1968); and *Bockoven v. Marsh,* 727 F.2d 1558, 1566 (Fed.Cir.), *cert. denied,* 469 U.S. 880, 105 S.Ct. 245, 83 L.Ed.2d 183 (1984); and *Murray v. United States,* 9 Cl.Ct. 71, 74 (1985).

**4.** Plaintiff submitted a series of letters dated: June 19, 25, and 26, 1985; July 7, 10 and 11,

plaintiff's case and awarded relief in several forms. The BCNR made its recommendation in a memorandum dated March 19, 1986.

First and foremost, the BCNR *voided* plaintiff's discharge of June 1, 1983, and permitted him to "continue[ ] as a member of the Naval Reserve after that date." AR II at 134. Plaintiff's illegal discharge was based on the findings of a Reserve Physical Evaluation Board (RPEB) convened on June 17, 1980, which was improperly composed because it lacked a Reserve member.[5] Further, the BCNR concluded that the RPEB acted in violation of this court's May 31, 1983 order (finding that plaintiff's NOE was improperly terminated prior to discharge) by considering plaintiff as a reservist *without* an NOE instead of as a reservist *with* an NOE. The advisory opinion of the Judge Advocate General (JAG), by memorandum dated February 7, 1986, concluded that "[Plaintiff's] physical disability processing was defective to the extent his physical evaluation boards did not make the findings appropriate to a Reservist with an NOE." AR II at 139. Thus, the discharge was invalidated because it was based on an illegal determination by the medical evaluation boards.

Next, the BCNR recommended that plaintiff's record be corrected to indicate that his NOE was never terminated. Because the NOE was terminated in connection with plaintiff's *unlawful* discharge, the BCNR found that the NOE should, as a consequence, be reinstated. Plaintiff has an entitlement to the NOE under 10 U.S.C. § 6148(a),[6] which states as follows:

A member of the Naval Reserve, the Fleet Reserve, the Marine Corps Reserve, or the Fleet Marine Corps Reserve *who is ordered to active duty,* or to perform inactive-duty training, *for any period of time,* and is disabled in the line of duty from injury while so employed, or the beneficiary of such member who dies from such an injury, *is entitled to the same pension, compensation, death gratuity, hospital benefits, and pay and allowances as are provided by law or regulation in the case of a member of the Regular Navy* or the Regular Marine Corps of the same grade and the same length of service. For the purpose of the subsection, a member who is not in a pay status shall be treated as though he were receiving the pay and allowances to which he would be entitled if serving on active duty.

(emphasis added). Thus, plaintiff, a member of the Naval Reserve, ordered to active duty, and injured in the line of duty, has an entitlement to pay and allowances.

Implementing 10 U.S.C. § 6148, SECNA-VINST 1770.3 ¶ 4 provides that:

This instruction contains administrative regulations and procedures *applicable to officers and enlisted personnel of the Navy* and the Marine Corps Reserve *who are called or ordered to perform active duty, active duty for training,* or inactive-duty training (drill) *and who may become entitled to disability or death benefits under [10 U.S.C. § 6148(a) ].*

(emphasis added). Plaintiff falls squarely, then, within the regulations contained in SECNAVINST 1770.3. Concomitantly significant is the fact that SECNAVINST 1770.3 ¶ 8 states, that "[i]n general, the No-

---

1985; two letters on October 28, 1985; one on October 31, 1985; November 1, 2, 3, 6, 7, 8, and 9, 1985; December 9, 1985; and March 3, 5, and 14, 1986.

**5.** The BCNR report states that the June 17, 1980 medical review board was missing a necessary reserve member; further, that board was tainted because it considered the results of the March 19, 1980 board that convened and was also missing a reserve member. The *de novo* review board convened on December 19, 1980, to review plaintiff's case because the original board was defectively composed and was tainted because it did not have all the new membership required by ¶ 0226 of the DEM of June 23, 1977,

and the Naval Physical Disability Review Board of March 20 and 27, 1981, which was convened because of the defects in the composition of the June 17, 1980 RPEB, had been tainted because it considered the records of the defectively composed review boards.

**6.** 10 U.S.C. § 6148 was repealed by Pub.L. 99–661, Div. A, Title VI, § 604(f)(1)(A), November 14, 1986, 100 Stat. 3877. However, the repeal of this section is applicable with respect to persons who, *after* November 14, 1986, incur or aggravate an injury, illness, or disease or die. *See* 10 U.S.C. § 1074. Plaintiff's injury was incurred prior to that date; therefore, the repeal is inapplicable.

tice of Eligibility for Disability Benefits (NOE) is the basic document used by disbursing officers for substantiation of entitlement to pay and allowances."

■ Against this background, the BCNR, therefore, properly recognized that, since plaintiff's discharge was voided, plaintiff's NOE must be reinstated in order for plaintiff to receive the pay and allowances he was entitled to under 10 U.S.C. § 6148. This court held, on May 31, 1983, in *Laningham,* 2 Cl.Ct. 535, that plaintiff's NOE could not be terminated based on a finding by the PEB that plaintiff was "fit for duty" under the evaluation standard of the DEM where plaintiff had not "recovered sufficiently to perform his normal military duties" which, in this case, were flight duties. 2 Cl.Ct. at 550. *See* SECNAVINST 1770.3 ¶ 9(c)(1). Plaintiff has not, to date, been found "fit" for such flight duty. Further, there has been no "final disposition" of plaintiff's status, which would permit a definitive termination of his NOE consistent with our May 31, 1983 holding in *Laningham.* SECNAVINST 1770.3 ¶ 10(a), therefore, requires that, "Pay and allowances [under the NOE] shall continue in cases [where plaintiff is not expected to return to duty] until final disposition is effected." Clearly, final disposition, as defined by this court as separation for discharge or retirement for disability, has not occurred. 2 Cl.Ct. at 551. Thus, we hold that the BCNR correctly awarded the reinstatement of plaintiff's NOE. Further, the BCNR found that plaintiff's record should be corrected to delete note of the discharge or the termination of the NOE to the extent inconsistent with the Board's recommendation.

In connection with its finding that plaintiff's disability evaluation was flawed, the BCNR recommended that plaintiff be processed, *de novo,* by the DES, to determine, without influence by prior medical boards, plaintiff's fitness for duty. Additionally, the BCNR rejected plaintiff's request for invalidating his transfer to Record Review status because it found no serious or substantial violation of plaintiff's right (*i.e.,* plaintiff was

not notified until 15 days after the transfer date) to due process of law in the assignment to Physical Risk Category 5. The BCNR also rejected plaintiff's claim for award of constructive service credit for retirement because it found that plaintiff was *eligible* to earn retirement point credit by taking correspondence courses.

To be enforced, such recommendations of the BCNR must be approved by the Secretary of the Navy. 10 U.S.C. § 1552(a) holds in that connection as follows:

> The Secretary of a military department, under the procedures established by him and approved by the Secretary of Defense, and acting through boards of civilians of the executive part of that military department, may correct any military record of that department, *when he considers it necessary* to correct an error or remove injustice.[7]

(emphasis added). As emphasized, the statute contemplates approval by the Secretary prior to enforcement of correction board decisions. Thus, the BCNR appropriately submitted their recommendations to the Assistant Secretary (AS), acting for the Secretary of the Navy, for discretionary implementation.

At bar, the AS reviewed the BCNR decision, and in his memorandum of August 13, 1986, explained that he performed a *de novo* review of plaintiff's case. In that memorandum, the AS acknowledged that he recognized that errors occurred in processing plaintiff through the DES. However, because he felt that this court had fully compensated plaintiff for any injustices brought upon him prior and up to June 1, 1983, the AS suggested that plaintiff be reprocessed through the DES as if he had been found "fit for duty" regarding his normal flight obligations in 1983 and, in that connection, make him whole. Instead of ordering a record correction indicating that the discharge of June 1, 1983, was null and void, the AS ordered reprocessing through the DES for a determination as to what disability benefits plaintiff would be entitled since June 1983.

---

7. Section 723.6 of Title 32, Code of Federal Regulations, provides that the BCNR may itself grant relief to an applicant in certain enumerated circumstances. The relief requested by plaintiff did not fall into any of these categories. *See* 32 C.F.R. § 723.7.

**308**

*Id.* He also directed that a new medical board be convened to consider plaintiff's physical condition based upon his medical record as it existed on the date of his separation.

In his memorandum of February 8, 1988, the AS indicated that a medical board had convened and that plaintiff had been reprocessed through the DES and found "fit for duty." AR II at 132. The AS then observed that this finding of "fitness for duty" led him to the conclusion that the BCNR recommendation that plaintiff's record must be corrected to show that his discharge as of June 1, 1983 was not appropriate. Further, he indicated that the finding of the CPEB which held that plaintiff was "fit for duty" as of June 1, 1983, led him to the conclusion that plaintiff was no longer entitled to the pay and allowances he received under 10 U.S.C. § 6148 as of June 1, 1983, when he was originally found "fit for duty." Thus, he (the AS) disapproved the BCNR recommendation to correct plaintiff's record to indicate that his NOE was never terminated. Finally, he relied on the CPEB finding to conclude that plaintiff should have been returned to his "normal reserve duties as of 1 June 1983." *Id.* Therefore, the AS ordered the NMPC Commander to determine what reserve/drill status plaintiff would have enjoyed from June 1, 1983, to the present, had he not been discharged illegally.

In response, the NMPC submitted memoranda to the BCNR and to the AS on July 18, 1988, and July 21, 1988, indicating the service credit due plaintiff had he not been illegally discharged on June 1, 1983.[8] In his memorandum dated August 1, 1988, the AS approved the recommendations of the NMPC, and on April 27, 1989, plaintiff's records were corrected to include the credit recommended by the NMPC as follows: Commander Laningham's record reveals he is credited with 22 years, 9 months, and 2 days of qualifying service and 3,320 retirement points. AR II at 133 and 148.

In summary, the AS approved the BCNR recommendation to void plaintiff's discharge. He also approved the addition of constructive service credit to plaintiff's record and pro-

ceeded to order the changes he approved. However, he disapproved the reinstatement of plaintiff's NOE.

■ Plaintiff cites to *Weiss v. United States,* 187 Ct.Cl. 1, 408 F.2d 416 (1969), for the proposition that a Secretary may not refuse relief recommended by a correction board when that board's findings are supported by substantial evidence. Thus plaintiff contends that the AS acted arbitrarily and capriciously in denying the reinstatement of his NOE, which was recommended by the BCNR.

We, therefore, look again to 10 U.S.C. § 1552(a), the origin of authority for the correction process, in order to firmly establish the procedure for review of Correction Boards' recommendations by the Secretary or his designee:

> The Secretary of a military department, ... *acting through boards of civilians* ..., may correct any military record of that department, when he considers it necessary to correct an error or remove injustice.

(emphasis added). The plain meaning of this portion of the statute is that the Secretary of the Navy must act *through* the BCNR in correcting military records and not contrary to its recommendations. In construing statutes, the Supreme Court admonishes that we begin with the language of the statute and inquire whether Congress has clearly spoken on the subject; and if the intent of Congress is patently clear, that is the end of the matter inasmuch as the court as well as the agency must give effect to the unambiguously expressed intent of Congress. *Norfolk & Western R. Co. v. American Train Dispatchers,* 499 U.S. 117, 128, 111 S.Ct. 1156, 1163, 113 L.Ed.2d 95 (1991), *citing Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984). In fact, courts will often give effect to the clear meaning of statutes, as written, without further inquiry. *Estate of Cowart v. Nicklos Drilling Co.,* — U.S. ——, 112 S.Ct. 2589, 120 L.Ed.2d 379 (1992). It is clear from the

**8.** *See* the recommended constructive service credit as listed in AR II 133 and 146–47.

foregoing statute that the Secretary is required to act *through* the Correction Board and not ignore its conclusions. However, we are constrained to consult prior precedent in this construction as well.

 *Weiss* stands for the proposition that the Secretary of a military department does not have the unilateral authority to set aside the findings of a correction board where such findings are supported by the evidence. *Weiss,* 187 Ct.Cl. at 12. *See also Hertzog,* 167 Ct.Cl. 377. Further, it has been held that, although the decision of the Board for Correction of Naval Records is a form of recommendation to the Secretary of the Navy, who will direct such action in each case as he determines to be appropriate, he may not arbitrarily overrule recommendations of a Board where their findings are justified by the record. *Neal v. Secretary of the Navy and Commandant of the Marine Corps,* 639 F.2d 1029 (3rd Cir.1981). The findings and recommendations of the Board are not merely advisory, and the Secretary cannot accept or ignore them as he/she sees fit; however, the Secretary can overrule Board findings not justified by the record before the Board. *Boyd v. United States,* 207 Ct.Cl. 1 (1975), *cert. denied,* 424 U.S. 911, 96 S.Ct. 1106, 47 L.Ed.2d 314 (1976); and *Proper v. United States,* 139 Ct.Cl. 511, 154 F.Supp. 317 (1957).

We find that the Secretary, through the AS, acted arbitrarily when he overruled the recommendations of the BCNR. The AS failed to establish that the BCNR findings were not supported by the record. Further, in light of the fact that the General Counsel performed a *de novo* review of the record,[9] and reached the identical conclusions as the BCNR,[10] we find that the AS, acting for the Secretary, acted arbitrarily. The AS's decision was reviewed because he consulted a non-uniformed officer in making his decision by having a military lawyer review the BCNR recommendations prior to the time they were presented to the AS for decision. AR Suppl. at 16–17. In fact, the Act of August 2, 1946, c. 753, Title II, § 207, 60 Stat. 837, which authorized the correction of military or naval records, required that the Secretary of the service concerned act, if act at all, through "Boards of civilian officers or employees" in the matter of deciding whether or not a record should be corrected, and, where the Secretary acted on the recommendation of a military advisor and against the recommendation of the Board, he acts in violation of the law. *Hertzog, supra.* Therefore, we find that the AS's decision denying reinstatement of the NOE, as approved by the BCNR, was arbitrary and inappropriate under the circumstances.

### a. *Reinstatement of the NOE*

Clearly, the BCNR on March 19, 1986, recommended that plaintiff's NOE should be reinstated and that a correction be made to plaintiff's record to indicate that the NOE "was never terminated." AR II at 300–09; AR Suppl. at 10–19. This recommendation was endorsed by the General Counsel for the Navy on July 27, 1989, and this court concludes that the defendant must follow the recommendation of the BCNR in plaintiff's case. *See Weiss,* 187 Ct.Cl. at 10–11, 408 F.2d 416.

 Plaintiff's request for reinstatement of his NOE arguably may be moot, given that the General Counsel of the Navy has ordered that the NOE be reinstated.[11] Plaintiff has apparently explicitly signified his election and has acknowledged by signature to receive the benefits stemming from reinstatement of the NOE. (Attachment to Joint Stipulation of Facts, at 3.) Mootness is a function of the requirement that a federal court entertain only an actual "case or controversy." *See Deakins v. Moaghan,* 484 U.S. 193, 199–200, 108 S.Ct. 523, 527–28, 98 L.Ed.2d 529 (1988); *North Carolina v. Rice,* 404 U.S. 244, 246, 92 S.Ct. 402, 404, 30 L.Ed.2d 413 (1971).

 However, we note, against this background, that the appropriate action to be taken on this record is to ensure that plaintiff's file is in fact corrected to reflect that *the NOE was never terminated,* indisputable

---

9. *See* AR Suppl. 19.

10. *See* AR II 300–09, AR Suppl. 10–19.

11. *See* NOE dated November 21, 1990, attached to the parties' Joint Stipulation of Facts.

proof of which has not been submitted to the court. While in his response to defendant's motion to dismiss dated October 31, 1990, plaintiff avers that the NOE has not been reinstated as of that date, defendant, in its November 21, 1990 reply thereto, avers that the "General Counsel acting through the Secretary has taken final action and reinstated Commander Laningham's NOE." Deft's Reply p. 2. Although that representation by defendant arguably may be considered a first step, it does not explicitly comply with the ruling of the BCNR "[t]hat petitioner's naval record be corrected to show that his [NOE] ... was never terminated." We do not find the BCNR's ruling to be arbitrary, capricious, or unsupported by substantial evidence. Therefore, defendant shall correct plaintiff's records to specifically state that "said NOE was never terminated." Corrected accordingly, we interpret the BCNR's recommendation to require that all benefits that would normally have accrued to plaintiff in the form of pay and allowances, but for the illegal termination, be awarded to plaintiff retroactively from the time of the unlawful termination (*i.e.*, June 1, 1983) to the time of reinstatement. Additionally, plaintiff shall continue to receive all pay and allowances under the NOE until properly terminated in accordance with applicable law and regulations. *Laningham I*, 2 Cl.Ct. at 558.

### b. *Constructive Service Credit*

 The BCNR recommendation letter dated October 10, 1989, specifically denies plaintiff any constructive service credit for the period now covered by plaintiff's reinstated NOE. The decision of the Board is, of course, reviewable by the Court of Federal Claims; however, this court has limited powers to review the BCNR's recommendation. *Hertzog, supra.* Such decisions of the Board are overturned only when found to be arbitrary and capricious, unsupported by substantial evidence, or not in accordance with the applicable laws or regulations. *Sanders*, 219 Ct.Cl. at 289, 594 F.2d at 811. We do not find, on this record, that the BCNR has abused its discretion in denying plaintiff the constructive service credit that he requests in violation of the standards enunciated in *Sanders*.

This is so because plaintiff has failed to meet his burden of establishing an entitlement to said form of relief. More importantly, plaintiff points to no statutes, regulations, or case law which squarely entitle him to constructive credit corrections as a disabled reservist. In fact, the only argument proffered to establish his entitlement to such relief is that his record had been previously corrected to include constructive service credit at the direction of the AS and thereafter his record was later corrected removing such credit. In his reply brief, plaintiff argues that the record correction awarded by the AS, dated August 1, 1988, was "final and conclusive on all officers of the United States." Whereas here the AS has failed to follow established policy and/or procedure, to the extent that the Under Secretary of the Navy candidly admits that his "decision is inappropriate and that corrective action is required," such circumstance affords an irrefutable basis for this court to find that the decision of the AS was arbitrary and capricious. AR IV at 16. Therefore, any action taken pursuant to said AS's decision is void, and the correction regarding constructive service credits is deemed not to have occurred. Further, because reinstatement of the NOE and the grant of constructive service credit are mutually exclusive remedies to plaintiff (as discussed *infra*), reinstatement of the NOE moots any argument by the plaintiff for constructive service credit-related record corrections.

 As defendant argues, there is no cognizable claim under the Tucker Act for such service credit additions to plaintiff's record for duties *he did not actually perform. See Banks,* 901 F.2d 1084, *cert. denied,* 498 U.S. 821, 111 S.Ct. 69, 112 L.Ed.2d 43 (1990). Reserve training solely creates a monetary entitlement when the reservist "actually performs" the training duties. *Banks,* 901 F.2d at 1087. *See also Ayala v. United States,* 16 Cl.Ct. 1, 4 (1988). Finally, SECNAVINST ¶ 5(b)(3) also addresses this issue. This section, related to reservists ordered to active duty for 30 days or less, such as plaintiff, states:

(1) When disability is caused by injury, this instruction applies.

 * * * * * *

(3) Orders for reservists in this category shall not be modified or extended.

Plaintiff argues implicitly that the reinstatement of his NOE is only "half-a-loaf" of relief, and that the BCNR is required to make plaintiff whole once it has determined that plaintiff is entitled to any relief. Plaintiff cites to *Sanders,* which does hold that where the applicant has convinced a Correction Board to correct his record, it must not grant him "half-a-loaf" of relief. He must be made whole. *Sanders,* 594 F.2d at 813. However, defendant contends that reinstatement of plaintiff's NOE, and pay and allowances thereunder, awarded plaintiff all the relief, *i.e.,* "the full-loaf," to which he is entitled, and that a record correction to include constructive service credit is a remedy which is mutually exclusive to the reinstatement of the NOE. We agree with defendant.

In furtherance of his position, plaintiff cites the NOE to be indicative of *deemed active duty* and, therefore, given this circumstance, argues that he should receive the constructive credit for that active duty. However, SECNAVINST 1770.3 ¶ 9(g) indicates that his position is misplaced wherein it clearly states that:

> Attention is invited to the fact that the *issuance of the NOE does not constitute assignment to active duty for training or an extension of the period of training duty to which ordered,* but provides authority for disability benefits authorized under this instruction. *The period during which the NOE is operative is not creditable as active duty or active duty for training, nor are retirement point credits authorized during such period.*

(emphasis added). We find that the award of constructive service credit, given the foregoing, in addition to the reinstatement of the NOE, would, therefore, impermissibly duplicate plaintiff's relief. The rationale behind an NOE is that it contemplates that plaintiff was disabled during the period it covers, and so it allows plaintiff to receive pay and allowances even though he was unable to perform his duties. Since plaintiff is not entitled to received pay and allowances for duties *not* performed under rulings such as *Banks, supra,* the NOE prevents plaintiff from being deprived while disabled, and fulfills his entitlement to such pay and allowances as granted under 10 U.S.C. § 6148 and implemented by SECNAVINST 1770.3. To then award a record correction which portends that plaintiff actually performed the normal duties of a reservist of his grade and length of service during that same period of disability would presuppose that plaintiff was in two places at the same time. The mutual exclusivity of the remedies sought are, therefore, fatal to plaintiff's position. We also refer plaintiff to the BCNR chairman's memorandum dated August 11, 1989, in which he explains that the two corrective actions have certain features in common; however, "they are significantly different conceptually." AR IV at 27. He continues by explaining that constructive service credit is "backward looking" and that NOE reinstatement calls for a current *de novo* examination of plaintiff's fitness. AR IV at 27.

The record discloses an additional reason why plaintiff would not be entitled to argue that the record correction awarded should not be rescinded, and that is because plaintiff himself chose reinstatement of his NOE as the preferred relief to constructive service credit. Moreover, we note that the administrative record includes a letter from plaintiff to the Assistant General Counsel of the Navy, Mr. David Lynch, dated July 17, 1990, in which plaintiff cites to *Ayala* to argue that pay and allowances for a reservist based on constructive service credit not actually performed are illegal. AR IV at 1. While in his letter dated September 24, 1989, in which plaintiff explicitly chose reinstatement of his NOE as his preferred choice between the two corrective actions, we are aware that he sought to reserve the right to pursue other relief in litigation and stated that he considered reinstatement of the NOE to be "partial relief." We believe such reservation gives plaintiff no comfort on his burden inasmuch as the two are mutually exclusive. Plaintiff has emphatically chosen the reinstatement of the NOE with attending pay and allowances, and he is in error in contending that such reinstatement is not a full-loaf.

Finally, we note the addition of SECNAVINST 1770.3A (January 8, 1990) ¶ 11(f) which states:

Issuance of an NOE does not constitute an assignment to duty. The period during which the NOE is in effect is not creditable as active duty or inactive duty training, nor are retirement point credits authorized during such period.

Thus, based on all of the foregoing, we find it clear that plaintiff cannot establish his entitlement to constructive service credit inasmuch as we cannot find that the BCNR's denial was arbitrary, capricious, in bad faith, or unsupported by substantial evidence, or in violation of law or regulation.

### 2. *Enjoining Defendant*

■ Plaintiff requests this court to enjoin the defendant from two different actions. First, plaintiff asks the court to enjoin the defendant from *reprocessing* plaintiff through the DES. Secondly, plaintiff requests that the court enjoin the defendant from *terminating plaintiff* prior to retirement for length of service. The court's authority to award injunctive relief in the context of this case derives from 28 U.S.C. § 1491, which states in relevant part as follows:

> (2) To provide an entire remedy and to complete the relief afforded by the judgment, *the court may*, as an incident of and collateral to any such judgment, *issue orders directing restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records* and such orders may be issued to any appropriate official of the United States.

28 U.S.C. § 1491 (October 29, 1992) (emphasis added). Accordingly, it is not in the court's authority to issue the broad injunctions plaintiff requests.

■ In connection with our holding that the BCNR recommendations should be effected in their entirety, the defendant is required to grant petitioner *de novo* processing appropriate to plaintiff as a reservist granted an NOE. AR II at 300–09; AR Suppl. at

10–19. This includes consideration by a medical board under SECNAVINST 1770.3 ¶ 10(a). We, therefore, order that the defendant shall, following the voiding of the discharge and the reinstatement of the NOE as if never terminated, process plaintiff according to applicable laws and regulations. *Laningham I*, 2 Cl.Ct. 535.

■ Finally, while plaintiff has eighteen (18) years of credited service for purposes of eligibility for retired pay at age 60, pursuant to 10 U.S.C. § 1331, he, nevertheless, is not entitled to sanctuary pursuant to 10 U.S.C. § 1163(d) [12] inasmuch as his status was "active duty for training" which is excluded from the benefits thereof. *Wilson v. United States*, 917 F.2d 529 (Fed.Cir.1990).

### B. *Discrimination in Violation of 10 U.S.C. § 277*

■ Plaintiff alleges that defendant has violated 10 U.S.C. § 277 by discriminating between Reservists on active duty of less than 30 days and Reservists on extended active duty or Regular duty. The aforementioned statute provides that:

> Laws *applying to both Regulars and Reserves* shall be administered without discrimination—
> (1) among Regulars;
> (2) among Reserves; and
> (3) between Regulars and Reserves.

10 U.S.C. § 277 (emphasis added). Plaintiff argues that defendant has discriminated among Reserves and between Regulars and Reserves in its application of the Naval Aviation Personnel Act of 1940, 54 Stat. 864, as amended by Public Law 108 of June 20, 1949, 63 Stat. 201. Public Law 108 and the Naval Aviation Personnel Act of 1940 were codified as 10 U.S.C. § 6148. 10 U.S.C. § 6148 states as follows:

> Disability and death benefits: Naval *Reserve* and Marine Corps *Reserve*

---

**12.** Section 1163(d) now provides:

Under regulations to be prescribed by the Secretary concerned, which shall be as uniform as practicable, a member of a reserve component who is on active duty (*other than for training*) and is within two years of becoming eligible for retired pay or retainer pay under a purely military retirement system, may not be involuntarily released from that duty before he becomes eligible for that pay, unless his release is approved by the Secretary.

(emphasis added).

A member of the Naval *Reserve,* the Fleet *Reserve,* the Marine Corps *Reserve,* or the Fleet Marine Corps *Reserve* who is ordered to active duty, or to perform inactive-duty training, for any period of time, and is disabled in the line of duty from injury while so employed, or the beneficiary of such member who dies from such an injury, is entitled to....

(emphasis added). Clearly, 10 U.S.C. § 6148 applies only to Reserves who are disabled or injured and does not apply to Regulars disabled or injured. Plaintiff argues that the original version of the Naval Aviation Personnel Act of 1940 as enacted did apply to both Regulars and Reserves. In 1978 when plaintiff was injured or in 1979 when the NOE was issued, 10 U.S.C. § 6148 was the law. Since it is 10 U.S.C. § 6148 that defendant is obligated to follow in compensating plaintiff for injuries incurred while on active duty training, plaintiff has no claim of discrimination. Plaintiff proceeds to make an extensive argument based on the progression of the Naval Aviation Personnel Act of 1940 that during the period of disability plaintiff should be *deemed* to be on active duty naval service. Further, plaintiff argues that the inclusion in the amended version of the phrase "pension [and] compensation," in addition to the award of pay and allowances, contemplated that plaintiff should receive retirement credit for the period of disability. Plaintiff argues that disabled regular service members and disabled reserve service members on active duty receive active service retirement credit and that it would be discriminatory not to award such to disabled service members on active duty of less than 30 days. The court does not agree inasmuch as it is not persuaded by plaintiff's analysis. We think it is sufficient to say that where, as here, a plaintiff has not actually performed or been ordered to perform work (drills), as a reservist, he is not entitled to "compensation" in any form. *Banks,* 901 F.2d at 1087; *Ayala,* 16 Cl.Ct. at 4. This we believe is particularly true inasmuch as SECNAVINST 1770.3 ¶ 9(g) provides that:

> ... the issuance of a NOE does not constitute assignment to active duty for training or an extension of the period of training duty to which ordered, but provides authority for disability benefits.... The period during which the NOE is operative is not creditable as active duty or active duty for training, *nor are retirement point credits authorized during such period.*

(emphasis added). Consequently, the record fails to support a finding that the BCNR's denial was arbitrary, capricious, in bad faith or unsupported by substantial evidence, or otherwise in violation of law or regulation.

### C. *Transfer to Records Review*

On September 21, 1979, plaintiff was notified that effective September 5, 1979, he had been assigned to Records Review in a non-pay status due to his neck injury. Up until that time, plaintiff had been assigned to VAW 78 as authorized by NAVPERS 1321/1 since September 25, 1971. Plaintiff argues that the foregoing transfer was wrongful and requests that this court order his transfer voided. Because his transfer was allegedly retroactive and involuntary, plaintiff complains that it was violative of Navy regulations. First, plaintiff cites to NAVRESINST 1001.1C ¶ 6 which states:

> When an officer is transferred from a drill pay to a non-pay status, he/she *will* be mailed a letter informing him/her of this transaction *prior* to the effective date of transfer.

(emphasis in original). While we find that defendant did technically violate said regulation, however, we further find that the violation (*i.e.,* failure to timely mail the letter of notice) is harmless error. The transfer had no monetary consequence because plaintiff was issued an NOE as of the same date entitling him to disability pay and allowances. Against this background, we observe that SECNAVINST 1770.3 ¶ 9(c)(1) provides, in pertinent part, that "[p]rocedures shall be established to insure that dual payments do not result since drill pay and disability pay for the same day are not authorized." Further, we agree with the BCNR finding that this was, therefore, only a superficial violation of a reserve instruction, and thus not "serious enough to invalidate the transfer," particularly since plaintiff was under, and entitled to, disability benefits at the time of the transfer. AR II at 142, 308. In that

capacity, plaintiff is entitled to receive pay and allowances under an NOE as a reservist performing duties of the same rank and length of service of a member of the Regular Navy. *See* 10 U.S.C. § 6148 and SECNAVINST 1770.3.

■ Plaintiff's transfer to Records Review also appears to have violated SECNAVINST 1770.3 ¶ 5(b)(3) because it specifically provides that "orders for reservists in this category shall not be modified or extended." However, plaintiff was already receiving disability under his NOE. Plaintiff was transferred to Records Review because he was found unable to perform his normal duties due to his injury. In fact, the BCNR recommended that the transfer to Records Review *not* be invalidated because they found that the determination on September 6, 1979, that plaintiff had a neck injury (which resulted in issuance of plaintiff's NOE on that date), raised a legitimate question as to his physical qualification. In seeking the reinstatement of his NOE, plaintiff warmly argues that the finding that plaintiff was not qualified for flight duty due to his injury was correct. He now, apparently, contradicts himself in arguing that the transfer to Records Review was grievously unlawful. We find that the transfer to Records Review proceeded after, or at least coincidentally with, the issuance of the NOE when in fact plaintiff was incapable of performing his normal flight duties. It would appear, therefore, to be inconsistent to issue plaintiff's NOE while his orders required that he perform his normal flight duties of a reservist.

The court notes a memorandum dated February 5, 1981, from the Chief of Naval Reserve which states that "[i]t appears that LCDR Laningham was erroneously transferred to Records Review as being not physically qualified." AR II at 69. However, this statement was made in the context of a memorandum contemplating plaintiff's NOE in light of a finding that plaintiff *was not unfit* for duty. Such finding was later invalidated by this court in *Laningham*, 2 Cl.Ct. at 550. Thus, the court does not consider this statement to be probative. Further, we also emphasize that the BCNR, in its original recommendation dated March 19, 1986, which the

General Counsel endorsed on July 27, 1989, specifically found that "the Board is not convinced that Petitioner's assignment to Records Review was invalid." AR II 142, 308. Thus, on this record and the failure of proof by plaintiff, we do not find that there was a compensable violation of SECNAVINST 1770.3 ¶ 5(b)(3) since he had been receiving disability benefits under the NOE at that time. Further, we find that the request for voiding this transfer is a back door method of trying to achieve the constructive service credit we have already found to be inapplicable.

■ Moreover, to prevail, a litigant is required to show demonstrable prejudice to support a charge of procedural error. A rule allowing technical procedural infractions to control the outcome of a case, without a showing of prejudice flowing therefrom, would promote form over substance. *See Gratehouse v. United States*, 206 Ct.Cl. 288, 300–01, 512 F.2d 1104, 1111 (1975); *see also Huling v. United States*, 185 Ct.Cl. 407, 412–13, 401 F.2d 998, 1001 (1968); *Campbell v. United States*, 2 Cl.Ct. 247, 249 (1983). We come to the conclusion, therefore, that with the absence of any demonstrated prejudice to the plaintiff, and in the particular circumstances of this case, any such violation is sufficiently technical as to be inconsequential and, therefore, constitutes harmless error, if any. *See Huling, supra; Polos v. United States*, 223 Ct.Cl. 547, 557, 621 F.2d 385, 390 (1980). The BCNR's decision should be overturned only when it is found to be arbitrary and capricious or when it is clearly not in accordance with applicable law or regulation or mandatory procedure of a substantive nature by which plaintiff has been seriously prejudiced. We do not find that to be the case at bar. Plaintiff's request to void the transfer is, therefore, DENIED.

### D. *Promotion to the Grade of Captain.*

■ Plaintiff contends that he has, by certain acts of defendant, been promoted to the rank of Captain and, consequently, invokes the doctrine of *res judicata* to preclude further review of plaintiff's so-called promotion to Captain, United States Naval Re-

serve.[13] The operative and sole probative evidence relied on for that fact is a letter dated December 15, 1989, from the Naval Reserve Personnel Center (NRPC) addressed to "Capt. Ross Jackson Laningham" relating to a subject other than rank or promotion. Nowhere in the administrative record is there any probative evidence as existed in *Laningham II*, 5 Cl.Ct. at 149–153, which caused this court to hold that "plaintiff was duly promoted to the rank of Commander, effective October 1, 1981." In fact, the record contains an affidavit from the Director, Naval Reserve Officer Promotions, Appointments and Enlisted Advancement Division, Naval Military Personnel Command, in which he affirms that he has reviewed plaintiff's service record and the record of selection boards convened to select officers of the Naval Reserve for promotion to the grade of Captain and that—(i) the records indicate that Commander Laningham was considered for selection for promotion to the grade of Captain by boards convened for fiscal years 1990 and 1991; (ii) he was not selected; (iii) his name has not appeared on any list of officers submitted for approval of the President; (iv) his name similarly has not appeared on any list of officers submitted for the advice and consent of the Senate for promotion to the grade of Captain; and (v) consequently, he concludes that Commander Laningham has not been promoted to the grade of Captain in the Naval Reserve. Thus, any reference to him serving in that grade is in error.

■ It is hornbook law that the separation of powers doctrine prohibits courts from trespassing in the field of promoting military personnel. *United States v. McLean*, 95 U.S. 750, 753, 24 L.Ed. 579 (1878); *Orloff v. Willoughby*, 345 U.S. 83, 73 S.Ct. 534, 97 L.Ed. 842 (1953). Moreover, at best, plaintiff can contend that the error was not inadvertent and, even given that hypothesis, it gives him no comfort. *See Morgan v. United States*, 17 Cl.Ct. 607 (1989), and cases cited therein.

Only one of the plethora of statutory/regulatory steps has been taken with regard to effecting an efficacious promotion from Commander to Captain, and that was that plaintiff *was considered for selection for promotion* to the grade of Captain by boards convened for fiscal years 1990 and 1991, but was non-selected.

Absent any probative evidence of a prima facie compliance with the operative promotion statutes and regulations, the court finds the explicit pronouncement in *Ayala*, 16 Cl.Ct. at 3, to be dispositive:

> ... This court has no authority to order a promotion absent a statute or regulation entitling plaintiff to the promotion as a matter of law. Hardly any rule of law is more well established than the one to the effect that courts are not empowered to direct the promotion of military personnel. *See Voge v. United States*, 844 F.2d 776 (Fed.Cir.1988); *Schuenemeyer v. United States*, 4 Cl.Ct. 649 (1984); *Doggett v. United States*, 207 Ct.Cl. 478 (1975); *Selman v. United States*, 498 F.2d 1354, 204 Ct.Cl. 675 (1974)....

■ Moreover, there is an additional reason why plaintiff may not prevail on this issue. Plaintiff failed to raise this issue before the BCNR. Therefore, this claim may not be raised for the first time in this court inasmuch as it was not ventilated administratively before the BCNR. *Doyle v. United States*, 220 Ct.Cl. 285, 311–12, 599 F.2d 984 (1980).

For all of the foregoing reasons, there is no probative evidence on this record establishing that plaintiff was at any point in time promoted to the grade of Captain.

*CONCLUSION*

Given all of the foregoing, by affirming the BCNR decision, we accordingly GRANT plaintiff's motion for summary judgment and DENY defendant's motions to dismiss and for summary judgment, as follows:

(i) that plaintiff's naval records be corrected to show that he was not discharged from

---

**13.** Plaintiff failed to raise this issue before the BCNR, *see* AR II at 134–143, nor did he raise it in Plaintiff's Motion For Summary Judgment dated August 31, 1990. In fact, this issue was first ventilated in Plaintiff's Response To Defendant's Motion To Dismiss dated October 31, 1990.

the Naval Reserve on June 1, 1983, but continued as a member thereof;

(ii) that plaintiff's naval records be corrected to show that his NOE, from its initial effective date, was never terminated;

(iii) that plaintiff is entitled to any and all unpaid pay and allowances from June 1, 1983, to the present pursuant to said NOE;

(iv) that said disability pay and allowances shall continue thereafter *until plaintiff is properly terminated according to applicable law and regulations;*

(v) that all of the BCNR's recommendations of March 19, 1986, contained on page 10, at paragraphs "c" through "g" are also affirmed and summary judgment is granted to plaintiff with respect thereto and denied as to defendant; and

(vi) in all other respects, plaintiff's motion for summary judgment is denied and defendant's motion is granted.

With respect to any monetary damages, pay and allowances to which plaintiff is entitled consistent with this opinion and similarly as reflected in its Supplemental Opinion dated June 8, 1984, this court hereby *sua sponte* issues a "Call" on defendant, *i.e.,* the Secretary of Defense (Defense Finance and Accounting Service), pursuant to RCFC 34(d)(1)(B) and 28 U.S.C. § 2507(a) to make appropriate computations in schedule form consistent with this opinion and applicable statutes and regulations, and file the same with this court by memorandum on or before March 7, 1994.

Within 30 days after the Clerk has served notice of the filing of said computation, each party shall file with the Clerk its acceptance or rejection of the computation. Any rejection(s) shall be accompanied by a statement particularizing the reasons therefor, with appropriate citations of authorities.

Following the filing of the foregoing, this court will issue a supplement to this opinion requesting the Clerk to enter judgment in favor of plaintiff for the specific net dollar amount consistent with this opinion; other-

wise the amount thereof shall be reserved for determination through further proceedings pursuant to RCFC 42(c).

IT IS SO ORDERED.[14]

---

14. While plaintiff duly requested oral argument in his motion for summary judgment filed on August 31, 1990, upon a review of the entire record, we are constrained to conclude that such is not needed. It is settled law that oral argument is for the benefit of the court and not the parties. Therefore, we find that, at this posture, it is not an imperative.